# CHARLESTON.

BOARD OF EDUCATION *v.* KANAWHA & M. R. Co.

Submitted September 15, 1897—Decided November 24, 1897.

1. EMINENT DOMAIN—*Damages—Measure of Damages.*
    If a part of a public school house lot is taken by a railroad company, the measure of damages is the value of the land taken, together with the damages to the residue, less peculiar benefits thereto from the construction of the railroad. (p. 74).

2. DAMAGES—*Measure of Damages—Benefits.*
    The damages to the residue, less peculiar benefits, is the difference between the value of the property for school purposes before the construction of the road and its market value for any purpose after the construction, if its value for school purposes has been wholly destroyed; and, if not, then the difference between its values for school purposes before and after the damages suffered. (p. 74).

Error to Circuit Court, Kanawha County.

Action by the board of education of Cabin Creek district against the Kanawha & Michigan Railroad Company. From a judgment setting aside a verdict for plaintiff, it brings error.

*Affirmed.*

BENJ. TRAPNEL and W. S. LAIDLEY, for plaintiff in error.

COUCH, FLOURNOY & PRICE, for defendant in error.

DENT, JUDGE:

The board of education of Cabin Creek district appeals from a judgment of the circuit court of Kanawha county,

rendered on the 7th day of July, 1897, setting aside the verdict of a jury in favor of said board against the Kanawha & Michigan Railroad Company for the sum or eight hundred dollars. After the verdict had been returned by the jury, not having interposed any defense, although in court and pleading, the attorney for the defendant company appeared, filed his affidavit, and moved the court to set aside the verdict, and grant the defendant a new trial, for two reasons: First, on the ground of surprise; second, because the verdict was contrary to the law and evidence. The affidavit filed is to the effect that defendant's attorney, resting under the belief that the defendant derived title to the land in controversy by general warranty deed from the heirs of William Dickinson, deceased, notified the attorneys of such heirs to defend the suit, and, taking it for granted that they would do so, paid no more attention to the suit until the verdict was returned. This is not a sufficient reason for setting aside the verdict. It was the duty of the company to be present in court, and defend its interest, and it had no right to shift the responsibility to the shoulders of others, unless certain it was right, and in that case there would be no justification for setting aside the verdict, as the company, having made deliberate choice of its remedy, should abide by it. The verdict of the jury had the effect to arouse the attorney to his responsibilities, and he immediately appeared, and moved to set it aside, as contrary to the law and the evidence. The facts, as gleaned from the testimony, so far as necessary to a determination hereof, are as follows: In 1875 the plaintiff purchased a half acre of ground of George W. Nugen at the price of forty five dollars, worth now about one hundred dollars. About the year 1882 it erected a second school house thereon, worth about seven hundred dollars. In the year 1892, the defendant, without legal permission so to do in any manner obtained, took possession of a large portion of the lot, and constructed a high embankment across the same for the bed of its road. It is shown that this took away and destroyed the children's playground, cut off communication with the river and spring on the bank thereof, and created a nuisance, both by reason of the noise occasioned by the running of the trains

and the danger to the children by reason of its proximity
to the school house, and the necessity for the children to
cross and recross the tracks so often, and, through thought-
lessness, to play thereon.   The board continued to use
the school house for school purposes, and down to the
time of trial had the regular annual school taught therein.

Outside of a few general statements, the only evidence
touching the damages involved was the testimony of W.
H. Edwards, at the time of the trial and for ten years pre-
vious thereto, president of the board, who testified as fol-
lows in answer to questions propounded: "It has ruined it
as a school lot.   It is good for nothing for school pur-
poses.   It takes the playground from the children, which
is the thing the children ought to have; and it exposes
them to the peril of their lives when they go after water;
and they can not keep them off the railroad, and either
way you can not see a train coming fifty feet.   *   *   *   It
is ruined for school property.   As a school property, it is
worth nothing.   That is all I can say.   The property is
worth about $1,000,—well, about $850, lot and all.   We
could not replace that house under $700, and it is all about
$900.   We are not allowed to use it for anything but school
purposes."   The jury, on the evidence, found a verdict
for eight hundred dollars, which was about fifty dollars
more than it had cost the board.   Counsel say that a large
part of this was interest estimated from the time the
damages first accrued.   They forget that, notwithstand-
ing their last witness testified that "as a school property
it is worth nothing," they show that the board continued
to occupy and use it for school purposes down even to the
present time; that the school was continued to be taught
therein, although the presence of the railroad and its
trains caused annoyance to the teachers and children.   Nor
has the question of exemplary damages anything to do
with this case.   This was not the taking of private proper-
ty for public use, but it was the taking of public property
for another public use.   This being public property, the
public had the right, through the company, its creature,
endowed with its franchises, though for private gain, to
take by purchase or condemnation.   The mere fact that
the company took posession thereof with the tacit consent

of the board would not make it liable for exemplary damages, but only for such compensatory damages as would make the ousted public use whole again.   6 Am. & Eng. Enc. Law, 581.   Nor does the fact that it is already public property enhance the damage, for the board has the full authority of law to condemn any suitable property to take the place of that of which it is deprived.   The same rule then governs in such cases as in the taking of private property, and this is a just compensation for so much as is taken, and for damage to the residue, beyond peculiar benefits to be derived from the work to be constructed. The first thing is to ascertain the value of the land taken, which in this case could not exceed fifty dollars, and next the damage to the residue, less peculiar benefits.   The damage to the residue is, conceding such to be the case, the entire destruction of the property for school purposes. The peculiar benefits would be the rendering the property valuable for other purposes, such as making in marketable as a dwelling house, storeroom, or otherwise; and hence the necessity of ascertaining the true market value of the property for any purpose.   The true rule, then, for the damages, is the difference between the value of the property for school purposes before it was damaged and the market value of the property for any purpose after it was damaged.   6 Am. & Eng. Enc. Law, 507; *Stewart* v. *Railroad Co.*, 38 W. Va., 438, (18 S. E. 604.)   This last matter was wholly disregarded by the plaintiff in its evidence, to the misleading of the jury.   A person who goes to his neighbor's granary in his absence, to recoup a tacit loan of corn, should not take more than would make him whole.   The law does not permit it.   The property in controversy may have a greater value for other purposes than it ever had for school purposes.   It would not be just to make the company pay for the property, and permit the plaintiff to keep it, and sell it at its increased or market value, but such value should be taken into consideration.   Before damage, it had no market value, for it was set apart for public uses, not marketable.   Being destroyed for such uses, it has a market value for other uses.   This the plaintiff could have ascertained, after it was abandoned for its purposes, by a sale thereof, which

is authorized by Code, c. 45, s. 33. If, however, the property is still to be used for school purposes, then the damage is the difference between its value for such purposes before and after the taking. Water could be supplied by a well, a high fence could be constructed so as to keep the children off the railroad, and adjoining land might be obtained for a playground. The evidence and law not justifying the verdict according to former decisions of this Court, the circuit court committed no error in setting the same aside. The judgment is therefore affirmed.

*Affirmed.*