Taft, J.
The first question[1] to be considered is whether compensation for the part of this land taken and damages to the residue thereof not taken can be based upon evidence as to its value for commercial uses notwithstanding that the commissioners held such land under what will be referred to as a restricted tenure, because title thereto was held under a deed preventing the commissioners from using the land except for a children’s home or from selling it.
Although in 1 Orgel on Valuation under Eminent Domain (2 Ed.), 187, Section 41 it is said that “no precise or uniform rule of valuation of property held under a restricted tenure can * * * be distilled from the relatively small number of reported decisions * * * dealing with the question,” it would probably be more accurate to state that those decisions are in almost hopeless conflict.[2] See also Jahr, Eminent Domain, 120, Section *295 86, 4 Nichols on Eminent Domain (3 Ed.), 139, Section 12.321. The English cases indicate this conflict very well.
Thus, where land held under a deed providing for restrictions as to its use is taken pursuant to exercise of the power of eminent domain, the English courts have apparently at different times reached the following three different conclusions as to the consideration to be given such restrictions in valuing the property taken:
1. No consideration should be given to such restrictions. Hilcoat v. Bird, Archbishop of Canterbury (1850), 10 C. B., 327, 138 Eng. Rep. R., 132, In re Arbitration between City and South London Ry. and Rector & Church Wardens (1903), 2 K. B., 728.
2. Pull consideration should be given to such restrictions. Stebbing v. Metropolitan Board of Works (1870), 6 Q. B., 37.
3. Consideration should be given to such restrictions but consideration may also be given to what chance there may be of having the restrictions removed by legislative[3] or other action. Corrie v. MacDermott (1914), App. Cas., 1056.
Although at least one decision in this country approved the first of those conclusions (see Town of Winchester v. Cox, Highway Commr., 129 Conn., 106, 26 A. [2d], 592), most of the decisions in this country have approved the second. Central Land Co. v. City of Providence, 15 R. I., 246, 2 A., 553; Southern California Fisherman’s Assn. v. United States (C. C. A. 9), 174 P. (2d), 739; First Parish in Woburn v. County of Middlesex, 73 Mass., 106; In re Albany Street, 11 Wend., 149, 25 Am. Dec., 618; In re New York W. & B. Ry. Co., 151 App. Div., 50, 135 N. Y. Supp., 234; and Board of Education v. Kanawha & M. R. Co., 44 W. Va., 71, 29 S. E., 503. We have found no decisions in this country that have approved the third conclusion. But cf. State of Gorga, 26 N. J., 113, 138 A. (2d), 833, involving zoning restrictions.
*296 The opinions in the American cases, which approve the second conclusion and which sustain the contention of the director on this question, give no reasons for such a conclusion; and they indicate a different approach to the problem of making an award from that approved by this court in Sowers, Supt., v. Schaeffer, 152 Ohio St., 65, 87 N. E. (2d), 257, 155 Ohio St., 454, 99 N. E. (2d), 313, Queen City Realty Co. v. Linzell, Dir., 166 Ohio St., 249, 142 N. E. (2d), 219, and Thormyer, Acting Dir. of Highways, v. Joseph Evans Ice Cream Co., 167 Ohio St., 463, 150 N. E. (2d), 30. Instead of approaching the problem as one of determining what the property is worth, regardless of the interests of ownership therein,[4] they approach the problem as one of determining the value of the ownership interest of a particular party. Cf. In re City of New York, 267 N. Y., 212, 196 N. E., 30, 98 A. L. R., 634, and In re Application of City of New York. 269 N. Y., 64, 199 N. E., 5, where owners of both dominant and servient tenements before court. Cf. also cases allowing compensation to one for whose benefit restriction imposed. Town of Stamford v. Vuono, 108 Conn., 359, 143 A., 245, and Johnstone v. Detroit, Grand Haven & Milwaukee Ry. Co., 245 Mich., *297 65, 222 N. W., 325, 67 A. L. R., 373. The same observation may also be made with respect to the English cases. Southern California Fisherman’s Assn. v. United States, supra (174 F. [2d], 739), represents an extreme example of this different approach resulting in a decision that would probably be impossible to reconcile with our decisions and pronouncements of law in the foregoing cases.
This court has held that (a) in determining the value of land in an appropriation proceeding, the question to be determined is the worth of the property for any and all uses for which it may be suitable, including the most valuable uses to which the land can lawfully, reasonably and practically be adapted (Sowers v. Schaeffer, supra [155 Ohio St., 454] paragraph three of the syllabus; Goodin v. Cincinnati and Whitewafer Canal Co., 18 Ohio St., 169, 98 Am. Dec., 95: Cincinnati and Springfield Ry. Co. v. Exrs. of Longworth, 30 Ohio St., 108), (b) since a land appropriation proceeding is essentially an appropriation of physical property and not merely the rights of persons, the value of the property as a whole is to be determined first without regard to what may be the interests of ownership therein, and (c) although, after a determination of that amount, it must be apportioned among those having interests of ownership in the appropriated property, the determination of the extent of those interests of ownership is a matter of no concern to the. appropriator of the property or to the jury called upon to determine the amount of the award (Sowers v. Schaeffer, supra [155 Ohio St., 454, 152 Id., 65]; Queen City Realty Co. v. Linzell, supra [166 Ohio St., 249]; and Thormyer v. Joseph Evans Ice Cream Co., supra [167 Ohio St., 463]).
It is apparent that, if we determine in the instant case that the award cannot be based upon evidence as to the value of the land for commercial purposes because the commissioners, as owners thereof, held title under a deed preventing them from so using it or from selling it, we will be departing to some ex-f ent from or making exceptions to the foregoing holdings. Since the making of such exceptions will substantially complicate the already complex problems that a jury has in determining the amount of an award in an appropriation case, we should avoid making them unless there are very good reasons for doing so. *298 Cf. Queen City Realty Co. v. Linzell, supra (166 Ohio St., 249), 253.
Valid arguments may be advanced against each of the foregoing three conclusions with respect to this question or solutions thereof which have been recognized by the courts. Under the first, giving no consideration to restrictions on the use of the property, the owner in effect gets more than the property was worth to him and thus may be said to get a windfall because of the appropriation, although the appropriator pays no more for the property than it is worth. Under the second, giving full consideration to such restrictions, the appropriator of the property is enabled to acquire it for less than it is worth, and thus may be said to get a windfall, although the owner at least theoretically is supposed to receive what the property was worth to him. The third solution, which gives effect to the restrictions but allows consideration of the chance of their removal, still involves at least part of the windfall to the appropriator involved in the second solution although it eliminates the windfall to the owner involved in the first solution and tends to avoid the possibility, involved in the second solution, that the owner may not get what the property was really worth to him. However, the third solution has a very serious disadvantage in that it greatly complicates the problem of determining the amount of the award by introducing an additional question to be considered by the jury in making that determination, i. e., the question as to the chance of a legislative or some other elimination of the restrictions involved. How can a jury make any intelligent evaluation of such a factor? The answer is obvious. It cannot. In our opinion, the uncertainty and confusion that would be created by requiring a jury, in determining the amount of its award, to evaluate such a nebulous factor would outweigh any theoretical advantage that the third solution might provide. Hence, we believe that our choice should be made between the first and the second solutions, although wo recognize that that choice will necessarily involve a choice of one of two .apparently undesirable results,— (1) a windfall to the owner or (2) a corresponding windfall to the appropriator.
Quite frequently, if not usually, an owner is not desirous of .giving up his property to the appropriator. In any event, not *299 the owner but the appropriator determines what land is to be taken. Furthermore, the owner frequently may not really get ( full compensation, notwithstanding the efforts of the law to do its best to provide him with it. See Thormyer v. Joseph Evans Ice Cream Co., supra (167 Ohio St., 463), 470 (no part of cost of removing personal property allowed); Sowers v. Schaeffer, supra (152 Ohio St., 65); Langenau Mfg. Co. v. City of Cleveland, 159 Ohio St., 525, 112 N. E. (2d), 658. Hence, it appears to us less unreasonable to permit the owner to get a windfall (especially where the appropriator is not required to pay more than the property is worth) than to permit the appropriator to get a corresponding windfall.
In Hilcoat v. Bird, Archbishop of Canterbury, supra (10 C. B., 328), it is said in the opinion by Wilde,C. J.:
‘ By the appropriation of property to ecclesiastical or spiritual purposes, the owner voluntarily sacrifices the pecuniary value of the property so appropriated; but he makes that sacrifice to obtain an object which he estimates of greater value than pecuniary value. But, when the object is entirely ivithdrawn from him, by the application of the property, against his will, to secular uses, and those uses connected with pecuniary profit, —-it does not seem consistent with justice to estimate the value to the owner upon the footing of its irrevocable appropriation to those spiritual purposes from which it has been already withdrawn.” (Emphasis added.)
In In re Arbitration, supra (2 K. B., 728), after quoting the foregoing portion of the opinion of the Hilcoat case, it is said in - the opinion by Yaughan Williams, J.:
“It seems to me that this is so, not only with reference to ecclesiastical property but with reference to every sort of property which is devoted to such purposes that it cannot be sold * * *. When there is an act of Parliament which says that property may be dealt with independently of its dedication to a special purpose, it seems to me that the payment in respect of its value ought to be estimated independently of the dedication, which has no longer any operation by, in effect, its repeal * * (Emphasis added.)
In Town of Winchester v. Cox, supra (129 Conn., 106), it is said in the opinion by Maltbie, C. J.:
*300 “It is true that the referee has found that the only evidence as to the value of the land to the town as a public park was that it had no value as a park. * * * the outstanding fact is that there has been taken from the town property which the referee has found had a value of $4,800 if the restriction to park uses be disregarded. * * * Suppose it had been within the power of the Legislature to direct that these lands be taken for the purpose of selling them to others, and it had done so, could there be any question that the town would equitably be entitled to receive their fair value, although there was no evidence that their use for a park was of benefit to the people of the state? Or suppose land given to trustees to hold for the purpose of use only as a public park was taken, would not a like conclusion follow? Certainly equity cannot be done to the town and to those for whose benefit it holds the lands unless it receives the equivalent of their value apart from the restriction, whether or not their use as a park was in fact beneficial.”
In the instant case, when the gift of this land was made to the commissioners in 1934, the donor obviously imposed the restriction as to its use primarily for the purpose of benefiting those who would be future occupants of the children’s home; and he obviously did not foresee that this land might be appropriated by the state for another use which would make compliance with that restriction impossible. It cannot be seriously suggested that, if he had foreseen that appropriation by the state, he would have wanted the state to benefit from the restriction by being enabled to take the land for less than it was worth. To give such an effect to the restriction would be to completely ignore and distort the purpose of the donor. The purpose he disclosed by his gift clearly indicates that, if he had foreseen the appropriation, his intention would have been that the restriction be eliminated in any determination as to what should bo made available by the state to replace the benefits he had provided for those whom he intended to benefit, %. e., the occupants of the county children’s home. A court should endeavor to carry out the general purpose of this donor as nearly as it may be carried out, where it becomes impossible to carry it out exactly as he specified. Cf. the doctrine of cy pres, Scott on Trusts *301 (2 Ed.), 2824, Section 399 et seq. If this is done, no effect can be given to these restrictions in valuing the property in this eminent domain proceeding.
Our conclusion is that compensation for the land taken in the instant case and for damages to the residue thereof not taken can properly be based upon evidence as to its value for commercial uses, notwithstanding that the commissioners held such land under a deed containing restrictions against using the land except for'a children’s home and against selling it.
The only other question of law raised is raised by the third assignment that “the Court of Appeals erred * * * in holding that the trial court did not err prejudicially by refusing to give the special instruction before argument” that reads:
“I charge you that, as a matter of law, for the purposes of arriving at the amount óf your verdict you may and should consider the most valuable use to which the real estate involved in this appropriation proceeding could reasonably and practically have been adapted. While for the purpose of arriving at the total amount of your verdict you may consider separately the value of the land and- the value of the buildings and structures erected on the land, you may not consider that the land has one most vahiable use and the buildings and structures erected on the land another and entirely different most valuable use. On the contrary, you should consider, and your verdict should be based upon, that most valuable use to which the property as a whole, including both the land and the buildings, structures and improvements thereon, could reasonably and practically have been adapted.” (Emphasis added.)
Throughout the trial, both parties apparently proceeded upon the theory that, since there was no market value for such special-purpose buildings as these children’s-home buildings, evidence, as to their cost of reproduction less depreciation was proper. See Jahr, Eminent Domain, 118 and 241, Sections 84 and 155, 2 Orgel, Valuation under Eminent Domain (2 Ed.), 4, Section 188. However, the director contends that there was no evidence that these buildings would have had any use for commercial purposes and hence it would probably have been necessary to tear them down in order to enable commercial use of the *302 land; and that, therefore, if the land and buildings are valued as a whole[5] for commercial uses, nothing should be allowed for the buildings. See 2 Orgel, supra, Section 188.
Even if we assume, as the director apparently contends, that it would be improper to give the buildings a substantial value as children’s-home buildings (as the jury obviously did) and then give the land upon which those buildings rested a higher value than that land would have had for a children’s-home use, it seems to us that, in view of the record in the instant case, the foregoing request to charge would have been misleading and was therefore properly refused.
The director contends that the entire 20% acres is necessary for the use of the children’s home, and one witness was permitted to testify that, in his opinion, it is. However, the map of the premises indicates that only a relatively small portion of the 20% acres being appropriated was occupied by or closely adjacent to the children’s-home buildings. In view of the physical facts indicated in the record, we believe the jury could have reasonably found that a substantial part of the land involved was not essential for maintenance of such children’s home. Hence, the charge could have misled the jury to the erroneous conclusion that, notwithstanding that it found a substantial part of the land not essential for children ’s-home purposes, such part of the land could not be valued for commercial purposes if the buildings, located on other portions of the land, were valued for children’s-home purposes.
Since no other questions of law are raised by the assignments of error, the judgment is affirmed.

Judgment affirmed.

Weygandt, C. J., Zimmerman, Matthias and Bell, JJ., concur.
Herbert, J., dissents.
Peck, J., not participating.

This question is raised by the refusal of the trial court (a) “to permit * * * evidence of the trustee relationship under which * * * the * * * commissioners held the land * * * and * * * the effect of that * * * relationship upon” its “fair market value” (assignment of error No. 1), (b) “to limit * * evidence * * * as to * * * value of the land * * * to the most valuable uses * * * permitted by * * * the deed by which * * * title thereto” was held (assignment of error No. 4) and (c) “to give special charges before argument” which stated in effect that, in determining the most valuable use of this property, the jury should consider that a purchaser could have used it only for a children's home (assignment of error No. 2).

Although relied upon by the director, we do not regard as particularly helpful those authorities refusing to allow compensation to be based upon evidence as to value for a use proscribed by a zoning ordinance. Long Beach High School District of Los Angeles County v. Stewart, 30 Cal. (2d), 763, 185 P. (2d), 585, 173 A. L. R., 249; Robinson v. Commonwealth, 335 Mass., 630, 141 N. E. (2d), 727; 4 Nichols on Eminent Domain (3 Ed.), 140, Section 12.322. But see Andrews v. City of Dallas (Tex. Civ. App.), 232 S. W. (2d), 753. A valid zoning ordinance is merely a law enacted pursuant to the police power. Hence, such authorities merely represent examples of holdings refusing to award compensation based on a value for a use that could not be lawfully made by any owner of the property. See Kingsland, Trustee, v. *295 Mayor, 110 N. Y., 569, 18 N. E., 435; Jahr, Eminent Domain, 114, Section 79. In the instant case, the use of the land for commercial purposes would not conflict with any valid exercise of the police power. Thus, if, before the director had sought to appropriate this land, there had been a reverter thereof to the heirs of the grantor, they could lawfully have so used it. Cf. In re Application of Board of Transportation, 140 Misc., 557, 251 N. Y. Supp., 409.

See Babin v. City of Ashland, 160 Ohio St., 328, 346 et seq., 116 N. E. (2d), 580.

The commissioners contend that those Ohio decisions require a conclusion that the valuation must be made without regard to the restrictions in the deed. Thus, it is argued that those who might have a right of reverter are before the court so that the sum of the interests of ownership in the property being taken as well as what is being acquired represents an unrestricted ownership that would permit a use for commercial purposes. However, this court in Babb v. City of Cincinnati, 55 Ohio St., 637, 48 N. E., 1110, O. S. U., 495. apparently held, when it affirmed without opinion a judgment of the Circuit Court apparently affirming without opinion City of Cincinnati v. Babb, 29 W. L. B., 284, 4 O. D., 464, that, notwithstanding a strict provision for forfeiture and right of re-entry if the property there involved was ever used for any purpose other than the church purposes for which it had been granted, since the performance of that required condition as to use was prevented by an eminent domain appropriation of the property, there was no reverter. See also In re Macklem, 14 Ont. App., 20, County of New Haven v. Parish of Trinity Church, 82 Conn., 378, 73 A., 789, Simes & Smith, Law of Future Interests (2 Ed.), 289, Section 2013, 4 Scott on Trusts (2 Ed.), 2841, Section 399.2, 19 American Jurisprudence, 545, Section 82. Thus, it is at least doubtful whether anyone other than the commissioners will be entitled to any part of the award in the instant case and we will therefore assume, in deciding this case but without intending to express any opinion to that effect, that the commissioners will be entitled to the whole of such award.

Although we express no opinion on the question, it may be noted that no statute such as Section 5519.08, Revised Code (“jury, in assessing compensation as to any owner of the land shall assess the value thereof exclusive of the structures. A separate finding shall be made of the value of the structures”), was involved in Sowers v. Schaeffer, supra (152 Ohio St., 65, 155 Ohio St., 454).