**UNITED STATES of America, Plaintiff,**

v.

**CERTAIN LAND IN CITY OF RED BLUFF, COUNTY OF TEHAMA, State of CALIFORNIA; City of Red Bluff; County of Tehama; and Unknown Owners, Defendants.**

**Civ. No. 8116.**

United States District Court . N. D. California, N. D.

March 30, 1961.

Laurence E. Dayton, U. S. Atty., and J. Harold Weise, Asst. U. S. Atty., San Francisco, Cal., for plaintiff.

Edmund M. Moor and V. Dean Close, Jr., Red Bluff, Cal., for defendant City of Red Bluff.

HALBERT, District Judge.

Plaintiff has instituted this action to condemn certain property, belonging to defendant, City of Red Bluff, hereafter in this memorandum referred to as defendant. The property in question is part of a city public parking lot, admittedly the property of defendant, and admittedly being used for a public purpose at the time of the taking. At a pre-trial hearing, the parties agreed to brief and submit to this Court for decision the pertinent legal issue which is here involved. All agree that this issue must be settled before this case can proceed expeditiously. The parties have now set forth their respective positions on this issue, and it is submitted to this Court for its ruling.

The issue to be resolved arises from the fact that plaintiff contends that the proper means of valuing the property in this case is its market value, whereas defendant contends that the proper measure is the cost of substitute facilities. This case may, in one sense, be described as one of first impression, for no decision as to the method of compensation for a city-owned parking lot has been cited by counsel or found by the Court.

Plaintiff contends that the only reason that the cost of substitute facilities is on occasion used as a measure of value is because the property (for instance a school or a road) has no market value. Plaintiff argues that as regards this case it is possible to find a market value since there are parking lots in private hands, which are the subject of sale. Schools and roads do, of course, have a market value, but such a standard of measure-

ment has been rejected because it does not provide "just compensation." [1]

One of the major distinctions between a business operation by a municipality, a state, or a governmental body and a business operated by private enterprise is the fact that the former can operate indefinitely at a loss, whereas a business operated by private enterprise cannot be operated unprofitably—certainly not for any substantial period of time. A road is built and maintained for the public benefit. It brings no cash return to the governmental body which builds it. It is patent that a private individual who owned the same land would not put it to such use. If the Federal Government takes a State road, in connection with a project which is of a scope such as to obviate the need for the road, then the State is relieved of the expenses of maintaining the road. Just compensation is therefore nothing, since the State has been relieved of a burden rather than being deprived of a benefit (State of California v. United States, 9 Cir., 169 F.2d 914; Mayor and Council of City of Baltimore v. United States, 4 Cir., 147 F.2d 786; State of Washington v. United States, 9 Cir., 214 F.2d 33; and City and County of Honolulu v. United States, 9 Cir., 188 F.2d 459).

If the taking of the road necessitates the construction of substitute facilities, just compensation is measured by the cost of the substitute facilities (State of Washington v. United States, supra; State of California v. United States, supra; Mayor and Council of City of Baltimore v. United States, supra; United States v. State of Arkansas, 8 Cir., 164 F.2d 943; United States v. Certain Lands, 3 Cir., 246 F.2d 823). The same rule applies to a bridge (United States v. State of Arkansas, supra), a school (United States v. Board of Education, 4 Cir., 253 F.2d 760) or a sewage system (Town of Clarksville, Va. v. United States, 4 Cir., 198 F.2d 238).

No good reason is made to appear why this same rule should not apply to a parking facility, in a proper case. In the instant case, the parking lot involved is admittedly a public use of the property. The lot is not operated by defendant as a mere money-making proposition, but to fill a public need. If there existed a public need at the time of the taking which made it reasonably necessary that a parking lot of comparable facilities be operated in the vicinity, then just compensation should be an amount equal to the cost of the substitute lot. If the taking were of such character as to obviate the need for a lot, and if the lot were operated at less return than the cost of maintaining and operating it, then the defendant would be relieved of a burden rather than of an asset, and just compensation would be nothing.

A factual determination is required to settle the issue raised by the parties. It must be determined whether there was a need for substitute facilities as a result of the taking. In making this determination, the question to be decided is whether other existing facilities serve the defendant's requirements and needs in as adequate a manner, and with utility equal to the facility which has been condemned. If there is a need for substitute facilities, there is no requirement that they be the ideal or most desirable facilities. It is only necessary that insofar as is reason-

---

1. It must be admitted that property can be described as having no market value at the time of the taking, if the governmental body, at that time, has no right to sell it (Mayor and Council of City of Baltimore v. United States, 4 Cir., 147 F.2d 786). In the Baltimore case, a market value, in the sense that plaintiff in the instant case uses that term, had apparently been established at the figure of $5,431. If defendant in the instant case had no right to sell the parking lot in the circumstances that existed at the time of the taking, then the lot had no market value in the sense of that term as used in the Baltimore decision. A much better way to state the proposition is this: Property dedicated by a governmental body to a public use, which brings the body no income, or less income than the cost of maintaining it, should not be valued by a market value test. Such valuation would obviously be unreasonable under the circumstances.

ably practicable they serve the defendant's requirements and needs with utility and adequacy equal to that of the condemned facility (State of Washington v. United States, supra). In the light of this controlling rule of law, the plaintiff's apprehension that defendant may buy whatever property it chooses, demolish expensive structures, build as grand a parking lot as it wishes, and present plaintiff with the bill, becomes unrealistic. It is obvious that plaintiff's apprehensions arose from a misunderstanding of what defendant was seeking, or at least of what defendant can, with propriety, secure.

■ The issue of whether there is a necessity for substitute facilities is a mixed question of law and fact. It cannot be resolved on the basis of the present record. The parties have indicated that they desire a separate trial on this issue. Such a trial will be held, before this Court sitting without a jury, upon motion of either party (Federal Rules of Civil Procedure, Rules 42(b), 71A(h), 28 U.S.C.A.; United States v. 4.16 Acres, D.C., 20 F.R.D. 89;[2] and City of Fort Worth, Tex. v. United States, 5 Cir., 212 F.2d 474).

It is, therefore, ordered that the issue of whether a parking lot operated by a city for public use may be compensable by the measure of the cost of substitute facilities be, and it is, hereby resolved in the affirmative;

It is further ordered that the issue of whether the particular property which is the subject of the instant case requires replacement by substitute facilities be tried by the Court separately and in advance of the issue of dollars and cents just compensation;

And it is further ordered that the pre-trial hearing in this case be again set down for Monday, April 24, 1961, at the hour of 2:00 p. m. Either party may present at that time such matters as may be deemed appropriate.

2. Memorandum order, dated September 24, 1954.