The STATE of Texas, Appellant,

v.

WACO INDEPENDENT SCHOOL DISTRICT et al., Appellees.

No. 4030.

Court of Civil Appeals of Texas.

Waco.

Jan. 17, 1963.

Rehearing Denied Feb. 7, 1963.

Will Wilson, Atty. Gen. of Texas, Morgan Nesbitt, Asst. Atty. Gen., Austin, John B. Webster, Sp. Asst. Atty. Gen., Dallas, for appellant.

Richey, Sheehy, Teeling & Cureton, Sam Lanham, Waco, for appellees.

TIREY, Justice.

This is a condemnation case. The State brought the action to condemn for highway purposes 7.40 acres of the campus of the University High School in Waco. The special commissioners awarded to appellee the sum of $603,328.00. Both State and school district filed their objections to the award, and upon jury trial in the County Court judgment for condemnation was rendered and appellee was awarded the sum of $850,-000.00. The State appealed.

The judgment is assailed on 16 Points. Points 1 to 7 inclusive are briefed together, and they are substantially to the effect that the Court erred: (1) In submitting to the jury issue 1 over appellant's objection that it contained an improper measure of damages; (2) Because the wording of the issue assumes that the remaining land and improvements do not have the same utility after the condemnation that they had prior to the condemnation and is, therefore, a comment on the weight of the evidence; (3) Because the wording of the issue assumes that there is. a necessity after the condemnation for the acquisition of additional land for school use and is, therefor, a comment on the weight of the evidence; (4) That the issue is multifarious; (5) That there was no pleading to support the submission of the issue; (6) In refusing to submit appellant's Issues 1 and 2 seeking the jury's determination of the value of the High School campus to the School District, both before and after the condemnation; (7) In refusing to submit appellant's requested Issue 3 for a determination of whether or not the condemned property had a market value as of the date of the taking.

The Court submitted one issue to the jury:

"What do you find from a preponderance of the evidence was the reasonable cost, on November 7, 1961, of land, if any, and facilities, if any, reasonably necessary to replace the 7.40 acres of land and facilities taken by the State with land, if any is required, and facilities of the same or reasonably equal utility for high school purposes as that to which the 7.40 acres and facilities were reasonably utilized immediately prior to the taking in question, and reasonably necessary, if any are reasonably necessary, to restore the remaining 18.35 acres of land and facilities to the same or reasonably equal utility for high school purposes as that to which the 18.35 acres of land and facilities were reasonably utilized immediately prior to the taking in question?"

To which the jury answered: "$850,-000.00."

■ A statement is necessary. The State's suit was filed pursuant to authority of Art. 6674w–3, Vernon's Ann.R.C.S., which article provides in effect that the exercise of power of eminent domain under such article shall be subject to the laws and procedures described in Article 3264 through Article 3271, R.C.S., Vernon's Ann. Civ.St. arts. 3264–3271. During the course of the trial the school district filed its first trial amendment, in which it alleged that the correct measure of damages in this case was the reasonable cost to the school district of providing reasonable substitute facilities to replace facilities condemned by plaintiff. Plaintiff duly excepted to this allegation and it was overruled. It is the State's contention that the difference between the value of the entire campus (25 acres) immediately before the taking, and the value of the remainder immediately after taking, and the market value of the condemned property, together with all damages, if any, which resulted to the remainder of the campus as a result of the condemnation, is the proper measure of damages. The State further contends that constitutional guarantee for compensation for the appropriation of the property for public use is controlled by Title 52 of our Revised Civil Statutes, and that Article 3265 sets forth the method of the determination of the compensation due to a property owner under the exercise of the right of eminent domain; that the concept of market value as the result of damages as set forth in the Article was recognized by our Supreme Court prior to the enactment of the statute, see Buffalo Bayou, B. & C. R. R. Co. v. Ferris, 26 Tex. 588 (1863); that our Courts have continued to recognize the market value for compensation as shown by the landmark case of State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194 and 979 (979 being the opinion of the Court on motion for rehearing). The State further contends that there is no precedent in the decisions of the Texas Courts for the use of the cost of replacing the condemned facilities as a result of the taking. In opposing the contentions of the State the school district says in effect that Article 1,

Section 17 of our State Constitution, Vernon's Ann.St. prevents appellant from taking, damaging or destroying or applying to public use any property without adequate compensation being made therefor. Such section, in part, provides: "No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person; * * *." This Court applied that rule in McLennan County v. Sinclair Pipe Line Company, Tex.Civ.App., 323 S.W.2d 471, n. w. h. See also Sinclair Pipe Line Company v. State, Tex.Civ.App., 322 S.W.2d 58, n. w. h. Testimony was tendered to the effect that the campus originally contained some 25 acres, and that the taking of the 7.40 acres included 4 buildings plus the major part of two other buildings; that for all practical purposes, the taking has included most of the classroom facilities of the high school, and that there is not much left. Mr. Downing, the Superintendent, testified to the effect that for all practical purposes the high school "had been wiped out" because the majority of the classrooms had been taken, and classes could not be successfully conducted with the facilities that were left, and the school is ruined by the taking as far as capacity is concerned; that after the taking that the school is left with a $250,000.00 gymnasium, a portion of the campus and three shop buildings, and that in order to make use of those facilities it was necessary to rebuild the academic classrooms; that without the classrooms, the gymnasium would be of no value to the school system; that in his opinion, as Administrator of public schools, that it is desirable and necessary to continue this program and to rebuild the school. He further testified to the effect that he had been a school teacher for 25 years, and during that time he had served as Administrator, Principal, Assistant Superintendent, and Superintendent for 16 or 17 years; that public high schools in the city of Waco or elsewhere, so far as he knew, were not bartered for sale as private property, and that the Waco School District did not sell or trade

its public schools; that public schools are not bought and sold. In fact, there is an absence of testimony in the record that public school property is traded and sold in the open market. So the major question in this case is: Did the Trial Court err in holding as a matter of law that the property of the school district as such did not have a market value, and that the form of submission in the Carpenter case, supra, would not give the school district an adequate measure of damages? We think the answer is "No." Our view is that the proper measure of damages is what is reasonably necessary to restore the remaining 18.-35 acres of land and facilities to the same or reasonably equal utility for high school purposes as that to which the 25 acres of land and facilities were reasonably utilized immediately prior to the taking in question, which measure of damage is presented in the issue the Court submitted to the jury. This view is grounded on the fact that it makes no difference whether the property had a market value or not, because the value of what the school has or what it has lost is not the inquiry before us; that inquiry is the cost of restoring the remaining facilities to a utility for school purposes equal to that enjoyed prior to the taking if the facility is reasonably needed to fill a public requirement. We are of the view that such Rule was applied in Town of Clarksville v. United States, Fourth Circuit, 4 Cir., 198 F.2d 238. In that case we find this statement:

> "Accordingly, the equivalence requirement which must be met with respect to the substitute facility is more that of utility than of mere dollar and cents value. * * * And the substitute facility must be that which the claimant is legally required to construct and maintain, whether or not this type be more expensive or efficient than the facility which was condemned."

Perhaps one of the finest discussions applying the foregoing principle is found in United States v. Board of Education, 253 F.2d 760, (4th Circuit), and cases there cited. See also United States v. Cors, 337 U.S. 325, 69 S.Ct. 1086, 1090, 93 L.Ed. 1392; Brown v. United States, 263 U.S. 78, 44 S.Ct. 92, 68 L.Ed. 171; City of Fort Worth v. United States, 188 F.2d 217, (5th Circuit). Applying the foregoing principle to the undisputed factual situation here the substitute facility can have no value of any kind until it is constructed, and it has no market value upon completion because it is set aside to Governmental use, so we are of the view that appellant's requested issue 3, inquiring of the jury whether the property had a market value was wholly immaterial, because of the views here stated. It is true that the Trial Court in United States v. Board of Education, supra, instructed the jury, in effect, that it must make a finding of any or no market value as a predicate to the application of the reasonable substitute rule; but on appeal the appellate court did not so treat the question. In its discussion of Mayor & City Council of Baltimore v. United States, (4th Circuit), 147 F.2d 786, the Court stated in effect that the street involved in the Baltimore case, like the school property it had before it, had no market value for the purposes for which it was being used, and that the Court's discussion of the reasonable substitute rule makes it clear that market value is not involved. The case of Board of Education v. Kanawha & M. R. Co., 44 W.Va., 71, 29 S.E. 503, is some authority for the proposition that school property, while devoted to such use, has no market value as a matter of law.

As we view this record it seems to us that the Trial Court grounded its view on the basis that the property remaining after taking has value to the school district only to the extent that it is a starting point from which to rebuild a high school campus that is absolutely necessary to the Waco School District; that, therefore, *the before* and *after value* to the premises to the school would be solely dependent upon the cost of acquiring or constructing reasonable substitute facilities; that the proposed issues as contended by appellant, is simply a more

complicated way of submitting the same issue of damages which the Trial Court framed in a single affirmative issue. Nor do we think the issue submitted was multifarious. As we understand the issue, it inquires as to the cost of the land and facilities, if any, necessary to replace those condemned so as to restore the remainder of the campus to a utility equal to that which the campus had prior to the condemnation. The issue does not call for separate elements of damages. The latter part of the issue relating to the restoration of the remaining 18.35 acres is not a separate element of damage, but on the contrary is a limitation imposed upon the jury to prevent it from including the cost of any land or facilities not necessary to the equivalence of the former utility. This clause, we think, protects the appellant against the possibility of the assessment of double damages. Moreover, it is obvious that this particular school cannot be operated without classrooms, and the evidence is undisputed to this effect. Surely sound business judgment would not tolerate the abandonment of the remaining 18.35 acres with its several hundred thousand dollars in improvements already thereon. Certainly an abandonment of the remainder would have resulted in much greater damage in this cause. It follows that we are of the view that appellant has not been harmed by the wording of the issue, but, on the contrary, has been afforded protection by the way in which the issue is worded. Under the factual situation here before us we are of the view that the measure of damages could not have been fairly submitted by following the form used in the Carpenter case, supra. For example, if the Trial Court had submitted an issue inquiring as to the cost of land and facilities reasonably necessary to the replacement of the 7.40 acres condemned by the State, and followed that with an issue inquiring as to the cost of land and facilities necessary to restore the remainder to equal utility, we think the Court would have invited a finding of double damages, since the only purpose for replacing the 7.40 acres is to restore the

remainder to the equal utility as it existed before the condemnation. Therefore, the Trial Court properly and fairly submitted the measure of damages in the single issue, and in so doing imposed upon the jury the limitation that prohibited it from allowing the cost of any replacement facilities not necessary to the restoration of the remainder. Since land and improvements have always been submitted together under the direction of the Carpenter case, therefore, the objection that the issue is multifarious is without any basis. This Court following the Supreme Court in the Carpenter case in State v. Miller, Tex.Civ. App., 92 S.W.2d 1073, (n. w. h.), opinion by late Justice Alexander, made this statement of the rule:

> "The remedy of eminent domain, * * is a harsh one and must be exercised in accord with the strict principles appertaining thereto. * * * Such proceeding is in the nature of an enforced sale in which the agency so appropriating the land stands in the position of a buyer. Consequently, it must either take the land with the permanent improvements thereon as it stands and pay for it accordingly, or reject it in toto."

In the Carpenter case on rehearing (Points 3–5) we find this significant statement:

> "* * * if the improvements which are situated upon the portion of land taken are essential to the use and enjoyment of the remainder of the land, or if their replacement, by removal or reconstruction, is necessary in order to obviate depreciation in the value of the residue, the cost of removal, and/or reconstruction and/or replacement may be a proper inquiry in connection with the issue of diminished market value of the remainder.

> * * * * * *

> "This opinion must not be construed as attempting to furnish an inflexible rule to be followed in all similar cases." (Points 7, 8.)

268

Here the evidence is without dispute that the school district must of necessity replace the buildings that the State destroyed by the taking. The school district is obligated and must have the additional classrooms in order to provide the facilities needed by the school, and consequently there is no way to do it and at the same time utilize the valuable improvements remaining on the 18.35 acres except by replacement.

There is a fundamental distinction between obligation resting on the agency condemning public property, and that of condemning private property. This distinction lies in the obligation thereby imposed on the condemnee. For example, a private party owes no duty to the public to continue its operation either at its original location or elsewhere. It can move, it can stay, or it can liquidate as it alone sees fit. Not so with a school system charged with a legal obligation to the public. A school system suffering the loss of one of its schools by condemnation must replace that school when the facility is necessary to the education of its children as shown by the undisputed evidence in this case. This is the legally imposed duty on the school district, and it has no other choice.

 Our view is that since the issue asks the jury to determine only one amount, and that since the State was taking part of school property and destroying it and the usefulness of the school for such purposes, the Trial Court correctly submitted the one issue as a proper measure of damages in this case. Nor do we think the issue is a comment on the weight of the evidence. The issue does not assume that the land and facilities were necessary to the restoration of the remaining premises for high school use. But on the contrary, the issue permits the jury to find that no additional land or facilities would be necessary since it inquires as to the cost of land, if any, and facilities, if any, necessary to replace the land taken by the State with land, if any is

required, and facilities necessary, if any, are reasonably necessary, to restore the remainder to equal utility. Surely that did not place any greater burden on the State than it was required to bear by reason of the taking of the 7.40 acres of land, and is in accord with the provisions of Article 1, Sec. 17, of our State Constitution, which provides in effect that you cannot condemn property without adequate compensation being made. It follows that we are of the view that Points one to seven inclusive do not present error and each is overruled. We have carefully considered each of appellant's other points, and it is our view that none presents error, and each is overruled.

 Perhaps we should add that it is our view that the evidence is ample to sustain the verdict.

Accordingly, the judgment of the Trial Court is affirmed. All costs of appeal are taxed against the State of Texas.