COMMONWEALTH of Kentucky, DEPART-
MENT OF HIGHWAYS, Appellant,

v.

CITY OF WINCHESTER, Kentucky, and
Clark County Board of Education,
Lessee, Appellees.

Court of Appeals of Kentucky.

March 29, 1968.

Rehearing Denied Oct. 11, 1968.

Robert Matthews, H. C. Smith, C. E. Skidmore, Dept. of Highways, Frankfort, for appellant.

J. Smith Hays, Jr., James B. Stewart, Winchester, for appellees.

MILLIKEN, Judge.

This case involves the condemnation of public school property by the Department of Highways.

"The best laid schemes o' mice and men gang aft a-gley * * *" and in this case the long range plans of the Winchester and Clark County school authorities were disrupted by the Highway Department when it condemned 2.37 acres from a 13.98 acre school tract for the construction of a four-lane highway, leaving 5.15 severed acres on one side of a deep cut and the school building on the other side. The jury awarded the school board $70,700.00 for the taking in conformity with the trial court's instructions which applied a substitute facilities or cost of replacement test for evaluating the damages rather than the before-and-after the taking market values standard for measuring damages, enunciated in Commonwealth of Kentucky, Department of Highways v. Sherrod, Ky., 367 S.W.2d 844 (1963). The Department's witnesses opined that the property was worth more after the taking than before, because of the commercial value of the severed tract. The Board asserted that the land affected was special purpose property for which there is no market in the usual sense of the word. The Department argues that the instruction given was erroneous and the award was excessive. The trial court had refused to give the standard Sherrod instruction offered by the Department, but instead gave the following instruction on the measure of damages:

Instruction No. 1

"What do you find from the evidence was the reasonable cost, on October 21,

1963, to reasonably restore, if necessary, the remaining 6.45 acres of land and facilities to the same or reasonably equal utility for elementary school purposes which the 13.98 acres of land and facilities were susceptible of being utilized immediately prior to the taking by the Commonwealth of Kentucky, Department of Highways, of the 2.37 acres for road purposes and the severance of the 5.15 acres created by said taking?"

According to counsel for the Board, "The distinguishing feature of this case which sets it apart from the others is an effort to secure recognition of a measure of damages for a special or exceptional class of property owners who cannot in any degree of fairness receive just compensation under the conventional market value doctrine. This Court has recognized this distinction, but little guidance, if any, has been afforded as to what other test of value should apply The Board has presented its case on one plausible test which has been applied in the federal courts and other state jurisdictions."

Determining whether the court's instruction does in fact present a plausible test for evaluating the damages in the case at bar requires a summary of the background and testimony, for it is conceded that comparable sales of school property are not available.

In 1956 a bond issue was passed by the residents of Winchester to expand the facilities of the city school system. At that time Winchester and Clark County maintained separate, independent school systems. A portion of the bond proceeds was used to construct in the north end of the city an elementary school known as the Fannie Bush School. This new school, consisting of fourteen classrooms, a library, a multipurpose room, playground and other necessary facilities, was erected on 13.98 acres of land which fronted on the west side of North Main Street (U.S. 60).

In 1957 Fannie Bush School was opened for the instruction of the first eight grades.

The core area of the school building had adequate facilities to accommodate additional students if and when other rooms were added to the building. (At the time of the taking more than a hundred children in the district had to attend another school because Fannie Bush School already had all the children it could handle.) Nearly six years later, on October 21, 1963, the State by condemnation proceedings acquired 2.37 acres of the Fannie Bush School property for roadway use. The purpose of acquiring this portion of the school property and other parcels of land in the immediate vicinity was to widen Maple Street into a four-lane road and to extend it in a northerly direction with the Paris Pike (U.S. 227). As a result of this acquisition by the State, the Fannie Bush School property was severed into two tracts, leaving 6.46 acres with the school building on the east side of the new street and 5.15 acres of vacant land on the west side of it. The new road traverses the approximate center of the property for 700 feet through a steep, vertical cut in order to provide vehicular clearance under the new L. & N. Railroad Bridge to the South. Although the school building itself was unaffected by the taking, the playground area was virtually destroyed. The severed tract of 5.15 acres fronts the new street 700 feet, but because of the extreme roadway cut only 150 feet of this frontage at the extreme north end is on grade. The severed tract has lost all of its use for Fannie Bush School purposes, having been completely cut off from the school building tract by the new roadway and the steep cut caused by its construction.

In the present case, prior to the taking, the 13.98 acre tract was capable of supporting an elementary school of twenty-two classrooms under the requirements of the Minimum Foundation Law and the Regulations of the State Department of Education. (Reg. 22.030). After the taking, the fourteen classroom school found itself on only 6.43 acres which is, according to the above regulations, substandard as to the required

area for both the existing and future pupil load within the district served by the Fannie Bush School. Therefore, expansion for this school was stopped by the taking and the original plans for the creation and location of the facility were thwarted. The school had, at the time of the trial, 423 pupils which amounted to a capacity load per classroom under the State Regulations. However, there were 541 children in the district who were eligible to attend the school, so 118 children were being bussed out to other schools in the system.

As indicated, the Department's action here has forced the Board to go elsewhere in Clark County in search of a solution for the expansion problem it must inevitably face. Even though the Fannie Bush School was originally constructed with later expansion in mind and contained ample boiler units and plumbing facilities in the core area to support an addition, the taking by the Highway Department ruled out any further expansion of school facilities at that location and made necessary the building of substitute facilities at another site if State Board of Education standards for new construction were to be met.

The evidence presented by the Board in support of the cost of substitute facilities was given by Henry L. Jones, a local realtor, and John Boyer Moore, an architect with considerable experience in the design and construction of elementary schools and institutional buildings. Both testified as to what it would cost to add more classrooms to the Fannie Bush School and to build a new school. The testimony also established, that to be practical, any new school should be on at least a twelve acre site and have not less than six classrooms. The difference in construction cost at a new site and at the Fannie Bush site was attributed largely to the existence of the core area at the latter. Correlation of the cost estimates of Jones and Moore is as follows:

| | | |
|---|---|---:|
| Cost to build 6 rooms at new site (6x$25,875) | . . . | $155,250.00 |
| Cost to add 6 rooms at Fannie Bush (6x$11,600) | . . . | $ 70,200.00 |
| Difference in building costs. | . . . | $ 85,050.00 |
| Cost to acquire a new 12-acre site (12x$3,000.00) | . . . | $ 36,000.00 |
| Total cost of difference in building costs and additional land. | . . . | $121,050.00 |
| Credit for severed tract. | . . . . | $ 7,725.00 |
| TOTAL DAMAGES | . . . | $113,325.00 |

We think it is apparent that the citizens of the school district have suffered more than an ordinary loss as a result of the taking of the land by the Department. They had approved a bond issue in 1956 to fund the growing needs of their school system, and their School Board had attempted to buy a site and construct a school susceptible to enlargement at a reasonable cost so that antiquated facilities could be abandoned. Now, the school authorities have been thwarted in their farsighted plan of modernization and expansion, will be forced to adopt a more costly alternative, and the citizens of the county will, of course, have to bear the added expense. Before the taking, the Fannie Bush School facility would have supported eight additional classrooms and at the time of the taking four additional classrooms already were needed; but after

710

the taking no expansion was feasible if compliance with State Board of Education standards for new school construction was to be continued. The correlation of the testimony of the Board's expert witnesses, Henry Jones and John Boyer Moore heretofore stated, was based on the construction of six new school rooms instead of the eight allowable. So, again we get back to whether the trial court's instruction provided a fair formula or test to enable a unanimous jury to award just compensation in the peculiar circumstances of this case.

Courts in other jurisdictions have adopted the substitute facilities approach as the best method of estimating just compensation in condemnation cases involving special purpose property, and federal courts have so held. The standard has been used in condemnation actions involving city parking lots (United States v. Certain Land in City of Red Bluff, Etc., D. C., 192 F.Supp. 725); roads (State of Washington v. United States, 9 Cir., 214 F.2d 33); bridges (United States v. State of Arkansas, 8 Cir., 164 F.2d 943); sewage systems (Town of Clarksville, Va. v. United States, 4 Cir., 198 F.2d 238); as well as schools (United States v. Board of Education of Mineral County, 4 Cir., 253 F.2d 760; State v. Waco Independent School Dist., Tex.Civ.App., 364 S.W.2d 263). All of the above mentioned cases contain explicitly and implicitly the idea that strict adherence to the time honored market value approach in all types of condemnation cases is not wise. In United States v. Board of Education, supra, an excerpt from the opinion of the U. S. Supreme Court in United States v. Cors, 337 U.S. 325, 69 S.Ct. 1086, 1090, 93 L.Ed. 1392, is quoted as follows:

"As said in United States v. Cors * * * however, we are not to make a fetish of market value 'since it may not be the best measure of value in some cases.' Where the highest and best use of the property is for municipal or governmental purposes, as to which no market value properly exists, some other method of arriving at just compensation must be adopted, and the cost of providing property in substitution for the property taken may reasonably be the basis of the award."

The same reasoning is followed in the Texas school case, State v. Waco Independent School District, supra.

See, to the same effect, Orgel on Valuation Under Eminent Domain Vol. II, Chapter XXIII, Section 246, page 253; Nichols on Eminent Domain, 4th Ed., Vol. IV, Section 12.3141, page 173. We are aware that Commonwealth of Kentucky, Department of Highways v. Congregation Anshei S' Fard, Ky., 390 S.W.2d 454 (1965) presented an anomalous condemnation proceeding—the taking of a church, but do not find it particularly helpful or applicable to the factual situation here.

It will be noted that the jury award of $70,700.00 is approximately only 60% of the Jones-Moore estimate of total damages amounting to $113,325.00. On the basis of their substantiated estimate the award obviously is not excessive. In fact, on the basis of their estimate, the award may be inadequate, but the Board has not cross-appealed.

While the instruction did not precisely present the formula of substitute facilities, the evidence was addressed to that formula and we think the jury understood the issues and were not misled in any way by the instruction.

The judgment is affirmed.

WILLIAMS, C. J., and EDWARD P. HILL, PALMORE, and STEINFELD, JJ., concur.