[No. 35907. Department One. October 5, 1961.]

PUBLIC UTILITY DISTRICT No. 2 OF GRANT COUNTY, *Petitioner*, v. THE STATE OF WASHINGTON, *Respondent*, THE COUNTY OF GRANT, *Appellant.*[*]

*Paul Klasen*, for appellant.

*The Attorney General* and *Delbert W. Johnson, Assistant*, for respondent.

HILL, J.—This is a controversy between the State of Washington and Grant county over the right to specify the location of the relocation of a portion of a public highway which is to be inundated in consequence of the construction of the Wanapum Dam across the Columbia river by Grant County Public Utility District No. 2 (hereinafter called the P. U. D.).

The P. U. D. stands ready to perform its statutory obligation to relocate and reconstruct the 3.7 miles of the public highway to be inundated (RCW 90.28.010 and .020).

*Reported in 365 P. (2d) 22.

One mile of this stretch of highway is conceded to be a part of Secondary State Highway No. 7C[1]. We are concerned with the status of the other 2.7 miles.

The state has designated a route some 4.6 miles in length at a higher elevation as the relocation of the 3.7 miles of the highway to be inundated (which includes the 2.7 miles with which we are here concerned). Grant county, however, insists that 2.7 of this 3.7 miles is a county road and, hence, the county—not the state—has the right to designate where the P. U. D. should relocate it.

Grant county's claim is based on the fact that it originally constructed the 2.7 miles of road; that, though the road is used as part of the present route of Secondary State Highway No. 7C between Vantage Bridge and the Vernita Ferry, the state has never officially made this strip a state highway and has insisted that the county continue to be responsible for its maintenance. The state has, by agreement with the county, taken over its maintenance, but deducts the cost thereof from Grant county's share of the gasoline tax money.

The state's position is that the 2.7 miles in question were of substandard construction and the strip was a part of a temporary route of Secondary State Highway No. 7C,

[1]This highway, as established by Laws of 1957, c. 172, § 21, p. 640 (RCW 47.20.320 as amended), has two parts—generally referred to as the "Othello" and "Vernita" legs. The former is described as ". . . beginning in the vicinity of the east end of the Vantage bridge on primary state highway No. 7, thence in a southerly direction parallel to the east bank of the Columbia river for a distance of approximately two and one-half miles, thence southeasterly in the vicinity of Othello . . ." and thence easterly to junctions with other highways.

The "Vernita" leg is described as ". . . beginning at a junction with secondary state highway No. 7C south of the Columbia river bridge at Vantage, thence southerly and easterly by way of Beverly and Arrowsmith to a junction with secondary state highway No. 11A north of its crossing of the Columbia river . . ." (This crossing is presently by way of the Vernita Ferry.)

This section contains the following proviso: *"Provided, That until such time as secondary state highway No. 7C is actually constructed on the location adopted by the director of highways, no existing county roads shall be maintained or improved by the state department as a temporary route of said secondary state highway No. 7C."*

hence the state was precluded (by the terms of the proviso quoted in footnote 1) from using state highway funds for its maintenance.

While Grant county thus, ultimately, pays for the maintenance of the 2.7 miles of highway, the strip is a part of the temporary route of the "Vernita" leg of Secondary State Highway No. 7C as established by Laws of 1957, c. 172, § 21 (RCW 47.20.320 as amended), and the trial court found it to be such.

■ However, if it be conceded that the 2.7 mile strip is a *de jure* county road, it is clearly a *de facto* state highway. It is the *de facto* state highway over which the public is presently traveling, and it is the *de facto* state highway which will be inundated; and it is the public use and necessity for a substitute for the *de facto* state highway that obligates the P.U.D. to relocate and reconstruct a substitute.

It is conceded that by case law[2] and statute[3] that Grant county is not entitled to damages for its investment in this particular 2.7 miles of road being inundated, simply because the road may have been built by and belong to the county or because the county may have paid the cost of maintenance thereof. It would be entitled to compensation (or relocation) only to the extent that, as a result of such taking, it would be compelled to construct a substitute highway.

It is no part of Grant county's responsibility to replace the inundated 2.7 miles of road. The inundation is a benefit, and not a detriment, as it relieves the county of what it has felt to be the unjust burden of its maintenance.

Grant county, having no obligation or responsibility to replace any part of the road inundated, the trial court

---

[2]*United States v. Des Moines County, Iowa* (C.C.A. 8th, 1945) 148 F. (2d) 448, 160 A. L. R. 953; *United States v. New York* (C. C. A. 2d, 1948), 168 F. (2d) 387; *State of Washington v. United States* (C. A. 9th, 1954) 214 F. (2d) 33. See also Annotation 160 A. L. R. 955; 4 Nichols, Eminent Domain (3d ed.), § 15.2; 1 Orgel, Valuation under Eminent Domain (2d ed.), § 42.

[3]RCW 90.28.010 and .020.

properly held that it should be dismissed from the P. U. D.'s condemnation proceeding.

FINLEY, C. J., WEAVER, ROSELLINI, and FOSTER, JJ., concur.