The County of Cook, et al., Petitioners-Appellants, v. The City of Chicago, a Municipal Corporation in Trust for the Use of Schools, Defendant-Appellee.

Gen. No. 51,333.

First District, First Division.

June 12, 1967.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Edward J. Hladis, Chief of Civil Division, James R. Burgess, Jr., and Ronald Butler, Assistant State's Attorneys, of counsel), for appellant.

James W. Coffey, of Chicago (Richard E. Girard, of counsel), for appellee.

MR. JUSTICE BURMAN delivered the opinion of the court.

This is an Eminent Domain proceeding brought by the petitioner, County of Cook, to condemn a portion of the property known as Shoop School. The City of Chicago, Defendant, was awarded the sum of $65,000 by the jury as just compensation for the taking. Petitioner's post-trial motion to set aside the verdict was denied and this appeal was taken from the judgment entered on the verdict.

The entire school property contains 218,242 square feet and is situated in the block bound by 111th, 112th, Bishop and Laflin Streets in a densely populated area. The area is fenced and unpaved with a two-story school containing 38 classrooms and serves 1378 pupils. The subject of the taking is 11% of the schoolyard amounting to 24,151 square feet and has the following utilities and playground equipment located on it: Toboggan slide,

sandbox, 2 softball backstops, 7 benches, 2 sets of parallel bars, 2 swing sets, 1 merry-go-round, 1 pair of horizontal bars, 2 horseshoe courts, 1 giant stride, 1 large tree, 1 water hydrant, 4 floodlights, 560 feet of chain link fence, 500 feet of new conduit which together with drains and other pipes are part of the entire system for all of the school and playground. The cost to the Board of Education for removal and relocation of the utilities and equipment amounts to $17,050, which amount was undisputed.

The petitioner called upon two qualified expert witnesses in the field of real estate appraisal to testify to the value accorded the condemned portion of defendant's premises. James W. Felton valued the premises at $36,388 for its highest and best use as school property. He said his valuation of the land taken was reached by adding 10% over the value of the raw land in the area. The other witness, Eugene H. Fries, valued the subject property for school purposes at $26,820. On cross-examination he said his valuation was based upon the fair market value between a willing buyer and a willing seller which would be the same as to the Board of Education. On defendant's motion the court ordered the testimony of Mr. Fries, as to value, stricken, and instructed the jury to disregard it. The court explained that after hearing argument in pretrial conference he had made his position clear that as a matter of law the fair market value between a willing buyer and a willing seller is not applicable as to value, where, as here, the property is used for a specific purpose. He stated, "This is a special use property for school purposes, and his valuation must be based on its highest and best use to school property and on no other basis."

The defense showed through the testimony of Francis B. McKeag, an Assistant Superintendent of the Chicago Public Schools who is experienced in the acquisition of school sites, that the highest and best use of the con-

demned property was continued school use and that the property would have to be replaced. He stated that it would be in the best interest of the Shoop School to acquire property in the block on the East side of Bishop Street from 111th to 112th Streets where there is some vacant and some improved land. From his investigation the cost of acquiring this plot would be $300,000 and about ⅓rd of this property would be to replace the property taken.

Richard J. Leyden, a real estate expert in the valuation of real property, testified that his valuation was based on its particular use on the theory of intrinsic value and not market value. He said that in order to replace this playground some contiguous plot of land must be found as a replacement. He testified further that the cost of acquiring such property for replacing the condemned property would amount to $80,243.

The petitioner contends that the trial judge erred in refusing to permit it to introduce evidence of Market Value, for the property involved, as a basis for determining just compensation, since such criteria represent the normal method of computing valuation in Eminent Domain Proceedings. It is argued that the court misinterpreted City of Chicago v. Farwell, 286 Ill 415, 121 NE 795, and subsequent railroad terminal condemnations, where the court, while stating that special capabilities of certain property must be considered in evaluating just compensation, never intimated that evidence of fair market value for the particular use could not be placed into evidence; that the court failed to distinguish between market value for any use, irrespective of the defendant's current use, and market value for the particular school use; and failed to allow petitioner to proceed upon his own theory of the case.

██  The court stated, in a pretrial conference, that "this is a special use property and it is not going to be governed by any fair market value of any property

in the neighborhood." A "special use" of property has been defined as a situation where the land is not available for use for general and ordinary purposes. Lake Shore & M. S. R. Co. v. Chicago & W. I. R. Co., 100 Ill 21. The petitioner insists that school premises are not of such a unique or extraordinary character as to meet the test of "special use" property. The petitioner says, "what is so unique or extraordinary about a school building or schoolyard that it must inextricably be placed in a category apart from the normal or ordinary use of property?"

■ In Sanitary Dist. of Chicago v. Pittsburg, F. W. & C. R. Co., 216 Ill 575, 75 NE 248, which involved the taking of a portion of the passenger and freight station grounds of a railroad, the court held that such property had no market value as it was devoted to a special and particular use and that it was proper for the railroad to show the value of the property for such special use. The court stated:

> It is a matter of common knowledge that such property as this and devoted to such a use is not bought and sold in the market or subject to sale in that way, and that such property has no market value in a legal sense. The property being devoted to a special and particular use, the general market value of other property was not a criterion for ascertaining compensation, although it might throw some light on the actual value. P 584.

■ In the matter of valuation of property, our Supreme Court has held that market value is not the basis for valuation when special use property is involved. See Lake Shore & M. S. R. Co. v. Chicago & W. I. R. Co., 100 Ill 21; Chicago, B. & Q. Ry. Co. v. Naperville, 166 Ill 87, 47 NE 734; and Chicago & N. W. Ry. Co. v. Chicago & E. R. Co., 112 Ill 589. We have found no case nor has any case been cited to us where the Supreme

Court has considered the matter of the valuation of school property being condemned.

■ ■ We disagree with the petitioner that a school and playground facility for the children is not a unique and extraordinary use of property so as not to be placed apart from the normal or ordinary use of property. There is no dispute that the defendant is required to replace the use of the condemned portion of its property by acquiring another site for the same special use. Just compensation requires the full and equivalent value of the condemned property as it is used entirely for school and playground purposes. Both the condemnation to take the involved property for the west leg of the Dan Ryan Expressway and the use of property for school purposes serve vital public needs. In United States v. Certain Land in Borough of Brooklyn, 346 F2d 690, 694, the court held that the trial court's refusal to consider the cost to the city of providing necessary substitute playground facilities to be erroneous, and went on to say that:

> . . . strict application of the market value rule of compensation will often be abandoned when the nature of the property or its uses produce a wide discrepancy between the value of the property to the owner and the price at which it could be sold to anyone else.

The petitioner further contends that assuming arguendo, that school premises must, as a matter of law, be regarded as "special use" property in condemnation cases, the trial court erred in allowing defendant's testimony relating to "intrinsic value" or cost of substitution of other land. Further that the instruction to the jury by the trial court embracing the concept of defendant's substitution theory and eliminating the petitioner's cost less depreciation, constituted prejudice to petitioner's cause by misleading the jury as to the proper method of arriving at just compensation for the condemned por-

tion. It is argued that even if school premises are regarded as "special use" property the testimony received in evidence of estimated cost of improving an adjacent land to make it physically identical with the portion taken is not competent evidence. It is stressed that there was a gross deviation from the normal valuation principles because the defendant's evidence was solely directed to the estimated cost of acquisition. The petitioner says, "the adoption of a substitution theory by the defendant to determine just compensation for a partial taking when the remaining property is not shown to be damaged or unusable is a novel concept unknown to Illinois."

While it is true that Fries, petitioner's expert witness, testified on direct that he appraised the property for its highest and best use as school property, he nevertheless testified on cross-examination, when asked whether he based his valuation upon its value to the Board of Education or some other element, that "I based it on the basis of the fair market value between a willing buyer and a willing seller, which would be the same as to the Board." We conclude that the trial judge on defendant's motion properly struck the testimony of this witness on valuation.

In State v. Waco Independent School Dist. (Tex), 364 SW2d 263, 268 (1963), the court upheld the ruling by the trial judge, as we do here, that the condemned school property as a matter of law is not to be valued on a market value basis, but by the cost of supplying the necessary substitute facilities for those taken to restore the same facilities for school purposes needed to fill the requirement of the school children, and said:

> There is a fundamental distinction between obligation resting on the agency condemning public property, and that of condemning private property. This distinction lies in the obligation thereby imposed on the condemnee. For example, a private

party owes no duty to the public to continue its operation either at its original location or elsewhere. It can move, it can stay, or it can liquidate as it alone sees fit. Not so with a school system charged with a legal obligation to the public.

■■ We are of the opinion that the trial judge was correct in holding that the defendant was entitled to acquire substitute facilities and that the cost of adjacent land to replace the property taken was properly admitted into evidence. See United States v. Board of Education, 253 F2d 760. In City of Chicago v. Farwell, 286 Ill 415, 121 NE 795, the court stated that market value basis is not the legal standard for property taken when applied to a special use such as a church, college, cemetery, clubhouse or terminal of a railroad. We have concluded, as did the trial judge, that this case presented a special situation which precluded market value testimony.

■■ The petitioner also complains that it was prejudicial error for the defendant's witnesses not to base their opinions on the so called "unit rule." It is argued that in evaluating the measure of just compensation where, as here, there is a partial taking, the testimony regarding valuation is governed by the "unit rule," that is, the total value of the land and building appraisals considered together and not separately. The unit rule is applied where market value is the test of valuation and where the part taken has greater or less market value as part of the whole. Here market value is not the test of valuation and therefore the unit rule is not applicable. Also no claim was made by the Board that the remainder had been damaged.

Other contentions were made and considered, but in the view we take, we do not consider it necessary to discuss them. Most of the objections stem from the initial ruling of the trial judge which was previously discussed in this opinion. We must note that the testimony

on valuation by James Felton, the petitioner's expert witness, was not stricken and was considered by the jury. This is shown by the jury's verdict which is considerably less than the acquisition figure of McKeag and well within the range of all the appraisals and the judgment rendered thereon.

The defendant moved to dismiss the appeal for certain reasons and the motion was taken with the case. In view of the fact that we have decided the matter on the merits we deem it unnecessary to pass on the motion.

Accordingly, the judgment of the Circuit Court is affirmed.

Judgment affirmed.

MURPHY, P. J. and ADESKO, J., concur.