STATE OF NEW JERSEY, BY THE COMMISSIONER OF TRANSPORTATION, PLAINTIFF-APPELLANT, v. TOWNSHIP OF SOUTH HACKENSACK, DEFENDANT-RESPONDENT.

Argued March 19, 1974—Decided July 9, 1974.

378

Mr. *Richard L. Rudin,* Deputy Attorney General, argued the cause for appellant (Mr. *George F. Kugler, Jr.,* Attorney General of New Jersey, attorney; Mr. *Stephen Skillman,* First Assistant Attorney General, of counsel; *Mr. Rudin,* of counsel and on the brief).

Mr. *Ralph W. Chandless* argued the cause for respondent (Messrs. *Chandless, Weller and Kramer,* attorneys; *Mr. Ralph W. Chandless, Jr.,* on the brief).

The opinion of the Court was delivered by

MOUNTAIN, J. This is a condemnation case. In the course of constructing Interstate Route 80, the Commissioner of Transportation found it necessary to condemn portions of six north-south streets in the Township of South Hackensack in Bergen County. The commissioners in condemnation made an award in favor of the Township from which the State appealed. A trial *de novo* in the Law Division resulted in a jury verdict of "no value" for the roadbeds.[1] The Appellate Division, in an unreported opinion, reversed the trial court and remanded the case for a new trial. We granted certification upon the State's petition. 64 *N. J.* 321 (1974).

The principal question for decision is whether this Court should adopt the rule of "substitute facilities" to be applied in those instances, such as this, where the State or some other

---

[1] A very small, triangular-shaped park was also included in the taking. A jury award of $1,575 for this particular property was not appealed and hence is not before us at this time.

condemnor takes part of the roadbed of a street or highway owned by a municipality, or over which it possesses a public easement.[2] The substitute facilities doctrine provides that in such cases the award of damages will be in an amount sufficient to pay the cost of constructing a substitute or replacement facility and need not necessarily bear any relationship to the market value of the land taken. The rule has been quite widely accepted elsewhere, especially in the federal courts. We have not hitherto had occasion to consider it.

It is of course today well settled that only upon the payment or tender of "just compensation" may property be taken for a public purpose by an exercise of the right of eminent domain. *N. J. Const.* (1947) Art. 1, par. 20; Art. 4, sec. 6, par. 3; *N. J. S. A.* 20:3–29. For most purposes just compensation is said to be the fair market value of the property as of the date of taking. *State v. Gorga,* 26 *N. J.* 113, 115 (1958); *State v. Cooper,* 24 *N. J.* 261, 268 (1957); *State v. Mehlman,* 118 *N. J. Super.* 587, 590 (App. Div. 1972). By this is generally meant the full equivalent in money of the property condemned. *Jersey City Redevelopment Agency v. Kugler,* 58 *N. J.* 374, 378 (1971). There seems now to be general agreement that the most satisfactory proof of such value is to be found in a study of comparable sales.[3] *State of N. J., by Com'r of Cons. v. Vacation Land, Inc.,* 92 *N. J. Super.* 471, 478 (App. Div. 1966); 4 *Nichols, Eminent Domain* (rev. 3d ed. 1962) sec. 12.311[3], p. 93.

Quite obviously the method of determining fair market value by an examination of comparable sales is in-

---

2Although this case is concerned only with the taking of certain roadbeds, the rule of "substitute facilities" has been held applicable with respect to the condemnation of other municipally owned facilities as well, such as parks, playgrounds and the like. See citations, *infra.*

3Other recognized methods of determining market value include the capitalization of earnings where the property is income-producing and reproduction cost less depreciation. *Jahr, Law of Eminent Domain,* 225–234, 241–249.

appropriate where the land, the value of which is at issue, is the bed of a street or highway. Comparable sales are not available because roadbeds are not customarily bought and sold. On the other hand sales of properties which can be put to normal residential or commercial use are clearly not comparable nor in any way helpful in seeking to determine the value of a roadbed. Nor, apart from the use of comparable sales, is there any other useful and reasonably accurate way of ascertaining the market value of such property. As one commentator has put it,

> While the state or municipality is entitled to be compensated for the acquisition of streets or highways, what is the measure of damage? Clearly it is not market value for these streets and highways do not possess a market value. [*Jahr, Law of Eminent Domain, supra*, 254–5]

*See also United States v. Certain Property in Borough of Manhattan*, 403 *F*. 2d 800, 802–803 (2 Cir. 1968).

■■ Furthermore, the bed of a street is a different kind of property from a tract or strip of privately owned land. Unlike the latter, a highway is not a commodity or asset susceptible to normal economic exploitation. It is not held or used for gain. Rather it is a facility, existing and maintained for the convenient use of the public. Title to streets and highways, whether it be in fee simple or by way of easement, is held in trust for the public use. 10 *McQuillin, Municipal Corporations* (3rd ed. 1966) sec. 30.36, p. 696–7; *Jahr, supra*, sec. 161, p. 253. It may be questioned whether a monetary award, unrelated to the cost of replacing the highway, can be said truly to constitute just compensation to the traveling public for the loss of such a facility. The inadequacy and incongruity of a monetary award as compensation for the taking of a roadbed, or of other like public facilities and conveniences, as well as the difficulties inherent in determining the amount of such an award, led to the development of the doctrine that with respect to such property, just compensation should take, not the form of market

value, but rather the cost of replacing the facility with a substitute or replacement.

It is clear that the constitutional requirement of just compensation can be met in other ways than by a payment of market value.

There is no precise and inflexible rule for the assessment of just compensation. The Constitution does not contain any fixed standard of fairness by which it must be measured. Courts have been careful not to reduce the concept to a formula. The effort has been to find working rules and practical standards that will accomplish substantial justice such as, but not limited to, market value. [*Jersey City Redevelopment Agency v. Kugler, supra,* 58 *N. J.* at 383–384]

The Supreme Court has pointed out that in condemnation cases the use of fair market value as the test of just compensation "is not an absolute standard nor an exclusive method of evaluation." *United States v. Virginia Electric & Power Co.,* 365 *U. S.* 624, 633, 81 *S. Ct.* 784, 791, 5 *L. Ed.* 2d 838, 847 (1961).

The doctrine of substitute facilities has been very widely accepted in the federal courts, where it has been applied to the taking of many kinds of public facilities, including highways, *United States v. Certain Lands Located in the Townships of Raritan and Woodbridge, Middlesex County, New Jersey,* 246 *F.* 2d 823 (3 Cir. 1957); *State of Washington v. United States,* 214 *F.* 2d 33 (9 Cir. 1954), cert. den. 348 *U. S.* 862, 75 *S. Ct.* 86, 99 *L. Ed.* 679 (1954); a public bath and recreation center, *United States v. Certain Property in Borough of Manhattan, supra,* 403 *F.* 2d 800 (2 Cir. 1968); a sewer system, *Town of Clarksville v. United States,* 198 *F.* 2d 238 (4 Cir. 1952), cert. den. 344 *U. S.* 927, 73 *S. Ct.* 495, 97 *L. Ed.* 714 (1953); school grounds, *United States v. Board of Education of Mineral County,* 253 *F.* 2d 760 (4 Cir. 1958); a playground, *United States v. Certain Land in Borough of Brooklyn,* 346 *F.* 2d 690 (2 Cir. 1965) and an entire town, *Brown v. United States,* 263 *U. S.* 78, 44 *S. Ct.* 92, 68 *L. Ed.* 171 (1923) (dictum).

The rule has likewise been adopted by a number of states, the courts holding that where property already devoted to a public use by one agency of government is condemned by another agency for an unrelated public purpose, just compensation should consist of either providing an equivalent substitute or paying the cost of a necessary replacement. *State Road Commission v. Board of Park Commissioners,* 173 *S. E.* 2d 919 (W. Va. Sup. Ct. App. 1970) (park); *City of Wichita v. Unified School Dist. No. 259,* 201 *Kan.* 110, 439 *P.* 2d 162 (1968) (40-year old public school building); *Public Utility District No. 2 v. State,* 58 *Wash.* 2d 873, 365 *P.* 2d 22 (1961) (highway); *Commonwealth v. City of Winchester,* 431 *S. W.* 2d 707 (Ky. Ct. App. 1968) (school property); *County of Cook v. Chicago,* 84 *Ill. App.* 2d 301, 228 *N. E.* 2d 183 (1967) (school property); *State v. Waco Independent School District,* 364 *S. W.* 2d 263 (Tex. Ct. Civ. App. 1963) (school property). *See also,* Note, "Just Compensation and the Public Condemnee," 75 *Yale L. J.* 1053 (1966); Dau, "Problems in Condemnation of Property Devoted to Public Use," 44 *Tex. L. Rev.* 1517 (1966); Note, "Compensation for Municipal Property Condemned by Federal Government," 48 *Colum. L. Rev.* 1096 (1948); Annot., "Eminent Domain: Cost of Substitute Facilities as Measure of Compensation Paid to State or Municipality for Condemnation of Public Property," 40 *A. L. R.* 3d 143 (1971).

We think the rule of substitute facilities is a just and sensible one. Henceforth, therefore, when the State or some other condemnor takes property which is already devoted to some public use by a municipality or other agency of government, the requirement of just compensation will be met by the condemnor furnishing an adequate, substantially equivalent substitute facility, which need not, however, be an exact duplicate of what has been taken. This may either be done by the condemnor actually constructing the replacement facility, as the Commissioner claims to have done here,

or it may take the form of a monetary award in an amount deemed sufficient to construct an adequate substitute for what has been taken. In the former case the condemnee is at liberty to contest the adequacy of the proffered substitute. If the trier of fact should determine that the new facility is inadequate, the condemnee will be entitled to a monetary award in such amount as may be needed to render the new facility substantially equivalent to that which was condemned, and the award must be devoted to this purpose.

A word is perhaps in order as to burden of proof. In the ordinary condemnation case, where the only issue to be resolved is the amount of compensation that the condemnee is to receive, neither party carries this burden. "The burden of proof concept has no place in such an inquiry." *Paterson Redev. Agency v. Bienstock,* 123 *N. J. Super.* 457, 460 (App. Div. 1973). However, on the issue as to whether a replacement facility is adequate, the concept does come into play and we think the burden of proof should be borne by the condemnor. If then the trier of fact, whether judge or jury, determines that the substitute facility is adequate, that will be the end of the matter. If, however, it is found to be inadequate, then the further question must be resolved, as to what monetary amount is needed to bring the facility to a state of equivalency. In considering this issue, the notion of burden of proof again becomes irrelevant.

Here the State, as part of the construction of Route 80, built one or more overpasses to accommodate north-south traffic in South Hackensack. At the same time it rearranged some storm and sanitary sewers that lay in the beds of the streets. It is the contention of the Commissioner of Transportation that these new facilities constitute an adequate replacement of the roadways that are no longer available and that the sewer systems have been in fact improved because henceforth they will require less maintenance. The Commissioner suggests that since the evidence before the trial court will support a finding that the substitute facilities are

adequate, we should simply reinstate the trial court verdict of "no value." A careful examination of the record convinces us that this would not be fair to the municipality. The evidence offered below was not specifically directed to the issue as to the adequacy or inadequacy of the replacement facilities. Indeed at one point counsel for the township was precluded from pursuing a line of cross-examination directed to this point, the court holding that the issue was apparently not presented in the case. We think that justice requires a new trial, especially in view of our having herein adopted a rule not before followed in this State. We are entirely in accord with the direction of the Appellate Division that the respective factual and legal contentions of the parties be framed, before the new trial, at a pretrial conference.

The judgment of the Appellate Division is affirmed, but for the reasons set forth above, and the case is remanded to the Law Division for further proceedings consistent with this opinion.

*For affirmance and remandment*—Chief Justice HUGHES and Justices HALL, MOUNTAIN, SULLIVAN, PASHMAN and CLIFFORD—6.

*For reversal*—None.