6

HIGHLINE SCHOOL DISTRICT NO. 401, ET AL, *Appellants*, v.
THE PORT OF SEATTLE, ET AL, *Respondents*.

Roberts, Shefelman, Lawrence, Gay & Moch, James S. Turner, and William G. Tonkin, for appellants.

Bogle & Gates, John C. Coughenour, William J. McDowell, Kimberley W. Osenbaugh, and Ronald E. McKinstry, for respondents.

UTTER, J.—Plaintiff school district appeals from the dismissal by summary judgment of a portion of its suit for damages allegedly caused by aircraft noise emanating from the flight operations of Seattle-Tacoma International Airport, owned and operated by respondents. The superior court dismissed plaintiff's inverse condemnation claim with respect to the "old runway" at the airport on the grounds that a 10-year statute of limitations was applicable and that no new "takings" occurred with respect to that runway during the 10 years preceding commencement of this action. The court also dismissed plaintiff's nuisance and trespass causes of action on the ground that such theories were inapplicable to damages attributable to aircraft noise. We affirm the order of summary judgment as to the nuisance and trespass claims, but finding a genuine issue of material fact exists with respect to the inverse condemnation theory, reverse the judgment as to that claim and remand for further proceedings.

The school district maintains 14 schools, attended by approximately 7,500 students, surrounding the airport. Commercial operations at the airport began in 1947 using the "old runway." In 1970 a "new runway" was opened about

800 feet west of and parallel to the "old runway." On June 29, 1973, the school district filed this action for damages allegedly caused by noise, vibration, and smoke from aircraft landing and taking off at the airport.

Statistics submitted by the port indicate the number of air carrier operations (which constituted 75 percent of all operations in 1972) more than doubled from 54,752 in 1963 to 114,372 in 1971. Average daily aircraft departures from the port's facility increased from 79 in 1960 to 159 in 1971. An acoustical engineer's affidavit submitted on behalf of the school district indicates many changes in quantity and quality of use and noise. From 1960 to 1972, the proportion of propeller aircraft using the airport diminished, while the proportion of turbojet and turbofan engines increased. Many of the four-engine jet transport aircraft have been replaced since 1963 by larger and noisier turbofan jet powered planes. These quantitative and qualitative changes in aircraft use as stated in the affidavit, result in doubling of the time lost for classroom and instructional purposes because of aircraft noise. Changes in jet operations and engines have resulted in potentials for substantial increases in the level of noise exposure for the district's schools which, in turn, can result in a substantial increase in the number of classrooms which have marginal or inferior noise environments for speech communication purposes. The trial court held that under the applicable law these circumstances presented no genuine issue of material fact.

I

Appellant assigns error to the ruling that a statute of limitations applies to bar that part of the inverse condemnation claim[1] for damages caused by activities at the air-

---

[1]Inverse condemnation has been defined as "the popular description of an action brought against a governmental entity having the power of eminent domain to recover the value of property which has been appropriated in fact, but with no formal exercise of the power. *Thornburg v. Port of Portland* (1962), 233 Ore. 178, 376 P. (2d) 100." *Martin v. Port of Seattle*, 64 Wn.2d 309, 310 n.1, 391 P.2d 540 (1964), *cert. denied*, 379 U.S. 989 (1965).

port prior to 1963, and urges no limitation period applies to an action based upon this theory.[2] Language from *Ackerman v. Port of Seattle*, 55 Wn.2d 400, 405, 348 P.2d 664, 77 A.L.R.2d 1344 (1960) is said to support this where the court indicated:

> We have held that an action for constitutional taking is not barred by any statute of limitations and may be brought at any time before title to the property taken is acquired by prescription. The prescriptive period in this state has been held to be ten years. See *Aylmore v. Seattle* (1918), 100 Wash. 515, 171 Pac. 659; *Domrese v. Roslyn* (1918), 101 Wash. 372, 172 Pac. 243; *Litka v. Anacortes* (1932), 167 Wash. 259, 9 P. (2d) 88

■ This statement of the rule, however, is not quite precise since acquisition by prescription is the result of the running of the statute of limitations. 7 R. Powell, *The Law of Real Property* ¶¶ 1019, 1026 (1974); *see Snohomish v. Joslin*, 9 Wn. App. 495, 497, 513 P.2d 293 (1973). Prior Washington decisions, including those cited in *Ackerman*, establish that the 10-year prescriptive period applies to an action for damages resulting from an exercise of the power

---

[2]The parties dispute the source of the school district's inverse condemnation action. The district predicates its claim on article 1, section 16 of the Washington State Constitution (amendment 9), the due process clauses of the state and federal constitutions, and the condemnation statutes applicable to the port, RCW 53.08.010 and 8.12.030. These statutes empower the port to exercise the right of eminent domain to acquire all "property, property rights . . . or easements necessary for its purposes . . . ", RCW 53.08.010, and "to condemn land and other property and damage the same for . . . any other public use after just compensation having been first made . . . ", RCW 8.12.030. The port contends that amendment 9 does not protect public property, citing *Moses Lake School Dist. 161 v. Big Bend Community College*, 81 Wn.2d 551, 503 P.2d 86 (1972), but agrees that the school district's claim may be based on the condemnation statutes. This is so because inverse condemnation "differs from eminent domain only in that the landowner institutes the action, rather than the entity possessing the condemnation power." *Martin v. Port of Seattle*, 64 Wn.2d 309, 318, 391 P.2d 540 (1964), *cert. denied*, 379 U.S. 989 (1965). Whatever the source of the claim, it does not determine the applicable statute of limitations.

of eminent domain.[3] Noting that an easement may be acquired by prescription, we stated in *Northwest Cities Gas Co. v. Western Fuel Co.*, 13 Wn.2d 75, 83, 123 P.2d 771 (1942), that:

> · The period required in this state to establish such a prescriptive right of way is ten years, by analogy to the provisions of Rem. Rev. Stat., § 156 . . . , which is the statute of limitations relative to actions for the recovery of real property.

The 10-year period in RCW 4.16.020,[4] the successor to Rem. Rev. Stat., § 156, is applicable to actions brought in the name or for the benefit of any municipal corporation, including school districts. RCW 4.16.160; *Edmonds School Dist. 15 v. Mountlake Terrace*, 77 Wn.2d 609, 611-12, 465 P.2d 177 (1970).

In early inverse condemnation actions alleging damages attributable to noise and vibration from airport operation, as contrasted with direct overflights of aircraft, we applied

---

[3]In *Aylmore v. Seattle*, 100 Wash. 515, 171 P. 659 (1918), we held the owner of property taken for public use is entitled to the benefit of the statute of limitations relating to adverse possession, since the government could not sooner acquire the property if no action were initiated. *See Cheskov v. Port of Seattle*, 55 Wn.2d 416, 419, 348 P.2d 673 (1960). "A corporation possessing the right of eminent domain may acquire property for its public uses in one of three ways only: (a) by purchase; (b) by condemning and paying for the property in the manner provided by law; and (c) by adverse possession for the statutory period." *Aylmore v. Seattle, supra* at 518. *Domrese v. Roslyn*, 101 Wash. 372, 172 P. 243 (1918), merely followed *Aylmore*. In *Litka v. Anacortes*, 167 Wash. 259, 9 P.2d 88 (1932), the court again followed *Aylmore*, and applied a 10-year period, referring explicitly to Rem. Comp. Stat., § 156, predecessor to the current RCW 4.16.020. The prescriptive period and the period required to establish adverse possession in Washington is derived from this statute.

[4]RCW 4.16.020:

"The period prescribed in RCW 4.16.010 for the commencement of actions shall be as follows:

"Within ten years:

"Actions for the recovery of real property, or for the recovery of the possession thereof; and no action shall be maintained for such recovery unless it appears that the plaintiff, his ancestor, predecessor or grantor was seized or possessed of the premises in question within ten years before the commencement of the action."

a 3-year statute of limitations. *Ackerman v. Port of Seattle, supra* at 406; *Cheskov v. Port of Seattle,* 55 Wn.2d 416, 419, 348 P.2d 673 (1960). In doing so, however, this court distinguished between "takings" of property, which were held subject to the 10-year limitations period, and "damagings," to which a 3-year period applied. We have subsequently abandoned the "difficult and treacherous" distinction between a "taking" and a "damaging." *Martin v. Port of Seattle,* 64 Wn.2d 309, 313, 391 P.2d 540 (1964), *cert. denied,* 379 U.S. 989 (1965). This corresponds to the recognition that ownership of property entails more than the right to exclusive possession, and includes the right to use the land. *Lange v. State,* 86 Wn.2d 585, 547 P.2d 282 (1976); *Richards v. Washington Terminal Co.,* 233 U.S. 546, 58 L. Ed. 1088, 34 S. Ct. 654 (1914); *United States v. General Motors Corp.,* 323 U.S. 373, 89 L. Ed. 311, 65 S. Ct. 357 (1945). Hence, inverse condemnation actions seeking recovery for interference with the use and enjoyment of property, whether characterized by physical invasion or not, are governed by the 10-year prescriptive period.

■ Appellant seeks to avoid the consequences of this conclusion by invoking the rule that property of a municipal corporation held in its governmental capacity for public purposes cannot be acquired by adverse possession. *West Seattle v. West Seattle Land & Improvement Co.,* 38 Wash. 359, 363, 80 P. 549 (1905); *Commercial Waterway Dist. 1 v. Permanente Cement Co.,* 61 Wn.2d 509, 512-13, 379 P.2d 178 (1963). It argues that, as a municipal corporation (*Edmonds School Dist. 15 v. Mountlake Terrace, supra*), its property interest in use and enjoyment may not be acquired by prescription anymore than title to the land may be acquired by adverse possession, a doctrine closely analogous to prescription. 7 R. Powell, *supra* at ¶ 1026. Our previous decisions, however, did not involve a situation in which the claimant was also a governmental entity. However valid the policies which underlie the rule against acquisition of municipal properties when the claimant is a private party, nothing favors its application where another

unit of government seeks to acquire the property interest. By virtue of the doctrine of prescription, as the trial court reasoned, a 10-year statute of limitations applies to the school district's inverse condemnation action.

## II

The trial court dismissed with prejudice the appellant's inverse condemnation claim insofar as it alleged damages attributable to operations on the "old runway" at Seattle-Tacoma International Airport. It reasoned that a cause of action for interference with the use of the school district's property accrued prior to 1963 when the probable extent of aircraft operations using the "old runway" became known and was therefore barred by the 10-year prescriptive period. The court also determined no new "takings" had occurred with respect to that runway during the 10 years preceding the commencement of this litigation and therefore entered summary judgment on this portion of the district's action. The district argues that even if the 10-year period is an applicable limitation, reasonable inferences from the facts submitted in opposition to the motion pre sent a genuine issue as to whether a new cause of action accrued after 1963, thus precluding the entry of summary judgment with respect to either runway.

In determining the proper standard with which to ascertain when, in the context of airport noise, a cause of action for inverse condemnation has accrued, both parties and the trial court focused on language from *Cheskov v. Port of Seattle, supra* at 420, which states:

> [A new cause of action accrues when] the disturbances causing the damage have become different in kind or substantially greater in degree, or greater than could reasonably have been anticipated when the airport was established.

Appellant contends this language should be read as written, in the disjunctive, so that a cause of action accrues when the interference becomes substantially greater in degree. Respondents, with whom the trial court agreed, urge that increases in noise attributable to aircraft operations, even

though substantial, do not give rise to a new cause of action unless the increases are "greater than could reasonably have been anticipated."

Whatever its meaning when written, the language of *Cheskov*, quoted above, has not been followed in this jurisdiction for the past 10 years. In *Martin v. Port of Seattle, supra* at 318, a unanimous court rejected the argument that interference with property rights must be "substantial" before it can amount to a compensable injury. The term "substantial interference," the court said, is "not pertinent . . . in the 'inverse condemnation' context, where the action is strongly analogous to the eminent domain proceeding." The court reasoned that the balance of individual and societal interests in such an action is accomplished by requiring only that the plaintiff show a measurable or provable decline in market value traceable to the interference by noise.[5]

In a proper case, replacement cost or the cost of necessary modifications may take the place of the diminution of value measure. When one governmental entity, exercising the power of eminent domain, acquires property held for public use by another governmental entity, diminution in property value is not always an appropriate measure of the property rights taken. This is true because such property may well not have a market value or the value may be an unfair representation of the loss since the prop-

---

[5]In inverse condemnation actions, as in eminent domain proceedings, the landowner is entitled to full and fair compensation for the loss of his property rights. *See Lange v. State*, 86 Wn.2d 585, 547 P.2d 282 (1976). In many instances this measure is the difference between the market value of the land before the injury and that value immediately after the injury. *Anderson v. Port of Seattle*, 49 Wn.2d 528, 304 P.2d 705 (1956); *Cheskov v. Port of Seattle*, 55 Wn.2d 416, 420, 348 P.2d 673 (1960). Where the injury is permanent but also increases over time, the full measure of damages is the total loss of market value traceable to the interference. Thus a landowner's recovery will not be diminished by the appreciation of value in the general real estate market, if any. Otherwise, if an unadjusted market value measure were applied, in a period of increasing property values the appreciation during a 10-year period of continuing interference conceivably could offset the loss of value inflicted by the interference.

erty is devoted to a special use. Thus, the rule has developed that where the condemnee governmental unit is obligated to furnish services which require use of the property taken, just compensation may be measured by the cost of providing necessary replacement facilities or the cost of modifications necessary to continue the obligatory use. We recently stated the principle underlying this rule in *Lange v. State, supra,* that the condemnee is entitled to be put in the same position monetarily as he would have occupied had his property not been taken. In *PUD 2 v. State,* 58 Wn.2d 873, 875, 365 P.2d 22 (1961), we noted in dicta that the county would be entitled to compensation only to the extent that it was obligated to construct a highway to replace the highway taken by condemnation. In *State v. Board of Educ.,* 116 N.J. Super. 305, 282 A.2d 71 (1971), the state, exercising its power of eminent domain, constructed a highway on a portion of school district property causing air and noise pollution which impaired the use of the site for educational purposes. The court stated, at pages 323-24:

> In a condemnation case of this type the landowner is entitled to compensatory damages based on the necessity and cost of putting the remaining property in shape to meet the changed conditions caused by the highway. . . . The damages assessed should be based on replacement, renovation, construction or alteration costs of the facility.

*See Wichita v. Unified School Dist. 259,* 201 Kan. 110, 439 P.2d 162 (1968); *Cook v. Chicago,* 84 Ill. App. 2d 301, 228 N.E.2d 183 (1967); *State v. Waco Independent School Dist.,* 364 S.W.2d 263 (Tex. Civ. App. 1963); 4 *Nichols on Eminent Domain* § 12.32 (rev. 3d ed. 1975).

A cause of action accrues on the occurrence of the last element essential to the action. *Gazija v. Nicholas Jerns Co.,* 86 Wn.2d 215, 543 P.2d 338 (1976). To maintain an inverse condemnation suit for damages attributable to aircraft operations, the property owner must allege interference with the use and enjoyment of his land and a resulting loss in market value. (*Martin v. Port of Seattle,*

*supra* at 320), or in a proper case, as noted above, a resulting need to undertake modifications.[6] A new cause of action thus accrues with each measurable or provable decline in market value. While it is true that "where a use which causes damage to adjacent property is permanent in nature, its effect upon the market value of that property is also permanent", *Cheskov v. Port of Seattle, supra* at 420, this theory of damages is inapplicable where the intensity of the interference changes over time.

Consequently, the landowner may recover the total damage resulting from all of those interferences which have not been eliminated as bases for liability by the acquisition of a prescriptive right. In other words, an inverse condemnation action for interference with the use and enjoyment of property accrues when the landowner sustains any measurable loss of market value and the recovery may be had for the total loss of value which is both attributable to the interference and sustained during the 10-year period preceding the commencement of the action.

In dismissing a portion of the school district's inverse condemnation claim, the trial court considered matters outside the pleadings, and thus the motion is to be treated as one for summary judgment. CR 12(c). When reviewing an order of summary judgment, this court engages in the same inquiry as the trial court. *Yakima Fruit & Cold Storage Co. v. Central Heating & Plumbing Co.*, 81 Wn.2d 528, 530, 503 P.2d 108 (1972). The motion may not be granted unless there is no genuine issue as to any material fact, CR 56(c), and the court must consider all facts submitted and all reasonable inferences from the facts in the light most favorable to the nonmoving party. *Yakima Fruit & Cold Storage Co. v. Central Heating & Plumbing Co., supra; Wood v. Seattle*, 57 Wn.2d 469, 473, 358 P.2d 140 (1960).

The data submitted by the port in this case indicates a

---

[6]For ease of reference the term "loss of market value" is used in this opinion to include alternative measures of damage available in appropriate circumstances. *See* footnote 5.

dramatic increase in aircraft operations during the 10 years preceding commencement of this suit. Appellant's affidavit of the acoustical engineer, uncontradicted by the port, indicates increases in the use of noisier aircraft during the same period. The court below correctly concluded no reasonable inference as to noise levels could be drawn from air cargo tonnage and passenger flow statistics. However, it is reasonable to infer that the quantitative and qualitative changes in operations at the airport from 1963 to 1973 led to a marked increase in noise interference with adjacent land, including that of the school district, which would result in a measurable diminution of property value and/or a need to undertake modifications to protect against noise interference. The extent of this damage is a genuine issue of material fact. Since the record suggests no difference between operations conducted on the "old runway" and those on the "new runway" and gives no indication that the noise interference during the 10-year period is attributable to only one runway, it is not logical to consider the inverse condemnation action divisible. The airport is operated as a single entity and the complaint alleges interference caused by operation of the facility as a whole. Therefore, the dismissal of the inverse condemnation claim must be reversed.

## III

Appellant's nuisance and trespass claims were dismissed in their entirety by the trial court. It concluded such theories were not properly applicable to an action seeking damages for interference with use and enjoyment of property by aircraft noise.

■ In *Ackerman v. Port of Seattle*, 55 Wn.2d 400, 407, 348 P.2d 664 (1960), involving loss of property rights through the operation of a nearby airport, we noted:

> [T]here is a steady evolution [in judicial decisions], for it is not quite true that there is nothing new under the sun; rarely is a case identical with the ones that went before. Courts have a creative job to do when they find that a rule has lost its touch with reality and should be abandoned or reformulated to meet new conditions and new moral values. And in those cases where there is no

stare decisis to cast its light or shadow, the courts must hammer out new rules that will respect whatever values of the past have survived the tests of reason and experience and anticipate what contemporary values will best meet those tests.

In this jurisdiction the evolution of inverse condemnation actions in the airport cases has made reliance on traditional tort theories unnecessary when, as here, the airport is owned and operated by a governmental entity and the recovery sought is only for loss of property rights, not personal or other injuries. Previous decisions in this and other jurisdictions upholding inverse condemnation actions against public airports have incorporated concepts of nuisance law and produced a doctrine which has been called "condemnation-by-nuisance." *See* Stoebuck, *Condemnation by Nuisance: The Airport Cases in Retrospect and Prospect*, 71 Dick. L. Rev. 207 (1967); Comment, *The Airport Noise Cases: Condemnation by Nuisance and Beyond*, 7 Wake Forest L. Rev. 271 (1971); *cf. Thornburg v. Port of Portland*, 244 Ore. 69, 415 P.2d 750 (1966); *Jacksonville v. Schumann*, 167 So. 2d 95 (Fla. Dist. Ct. App. 1964). The principles enunciated in *Martin v. Port of Seattle*, 64 Wn.2d 309, 313, 391 P.2d 540 (1964), *cert. denied*, 379 U.S. 989 (1965), went beyond restrictive tort law requirements. "[W]hen private property rights are taken from the individual and are conferred upon the public for public use, eminent domain principles are applicable", *Ackerman v. Port of Seattle, supra* at 408, and tort theories are inappropriate. In fact the *Ackerman* court deemed it unnecessary to discuss the plaintiffs' nuisance claim since it upheld their inverse condemnation claim. *Ackerman v. Port of Seattle, supra* at 404. In circumstances where the inverse condemnation theory is available, potential plaintiffs are not disadvantaged if they are denied recourse to a nuisance cause of action.[7] Of course, where a plaintiff seeks to recover dam-

---

[7]Traditional nuisance principles, whether based upon common law or statute (*see* RCW 7.48.010, 7.48.120), present several obstacles to plaintiffs alleging damages attributable to aircraft noise. The noise must result in a "substantial interference" with the use and enjoyment of the

ages for other than loss of property rights or where the defendant is not an entity to which eminent domain principles apply, the nuisance remedy is still available.

■■ By the absence of authority and argument on the issue, appellant's briefs make it clear it has abandoned its trespass claim. *Talps v. Arreola*, 83 Wn.2d 655, 657, 521 P.2d 206 (1974). Moreover, modern trespass doctrine protects a landowner's interest in exclusive possession, not his right to be free from interference in the use and enjoyment of his property which is asserted by appellant here. *See* Restatement (Second) of Torts §§ 157-166 (1965); W. Prosser, *Law of Torts* § 89, at 595 (4th ed. 1971). The dismissal of both the nuisance and trespass claims is therefore affirmed.

Judgment affirmed in part; reversed in part.

ROSELLINI, HUNTER, HAMILTON, WRIGHT, BRACHTENBACH, and HOROWITZ, JJ., and RYAN, J. Pro Tem., concur.

Petition for rehearing denied July 7, 1976.

---

land. W. Prosser, *Law of Torts* § 87, at 577-80 (4th ed. 1971). The plaintiff must demonstrate the "unreasonableness" of the defendant's activity. As the court stated in *Riblet v. Spokane-Portland Cement Co.*, 41 Wn.2d 249, 254, 248 P.2d 380 (1952):

> In a nuisance case, the fundamental inquiry always appears to be whether the use of certain land can be considered as reasonable in relation to all the facts and surrounding circumstances.
>
> Application of the doctrine of nuisance requires a balancing of rights, interests, and convenience.

In this balancing, courts weigh the social utility of the interfering use against the gravity of the harm to the plaintiff. W. Prosser, *supra* at 580-81. An additional factor is the character of the neighborhood in which the defendant's activity is conducted. *Morin v. Johnson*, 49 Wn.2d 275, 281, 300 P.2d 569 (1956). The degree of community dependence on the particular activity is often considered. Therefore, courts will be reluctant to subject an interfering use to potentially great tort liability because the litigation will commence only after a decision to employ a particular technology has been made, large sums of money have been expended, and the enterprise is already in operation. Kramon, *Noise Control: Traditional Remedies and a Proposal for Federal Action*, 7 Harv. J. Legis. 533, 539-40 (1970).