[No. 7403-6-II. Division Two. October 18, 1985.]

REBEL LORAN, *Appellant,* v. DAIRYLAND INSURANCE
COMPANY, *Respondent.*

*John A. Barlow* and *Walstead, Mertsching, Husemoen,*

*Donaldson & Barlow,* for appellant.

*W. Matt Murray* and *Murray, Dunham & Murray,* for respondent.

ALEXANDER, J.—Rebel Loran appeals from an order granting summary judgment in favor of the Dairyland Insurance Company and the denial of his motion for summary judgment. We affirm.

On March 16, 1983, Loran received injuries when an automobile in which he was riding as a passenger became involved in a 1-car accident. At the time of the accident, Loran was not employed and was receiving unemployment compensation benefits of $180 per week from the State of Washington.[1] Those benefits were terminated several days after the accident because Loran then apparently was unable to perform work. Both Loran and the driver of the vehicle in which he had been riding, Ed Bradley, were insured by the Dairyland Insurance Company. Bradley's liability policy's limits amounting to $25,000 have been paid to Loran because of the accident. However, Loran also has coverage under his own policy's personal injury protection provisions.

Loran's Dairyland policy specifies that, for a loss incurred because of bodily injury arising from an accident, the company will provide:

income continuation benefits to or on behalf of each injured person who at the time of the accident was *usually* engaged in a *remunerative occupation.*

(Italics ours.) Income continuation benefits are defined in the policy as: "85% of the injured person's *loss of income from work, . . .*" (Italics ours.)

Loran sought benefits from Dairyland, asserting that under the policy provisions, he was entitled to 85 percent of his lost unemployment compensation as an income contin-

---

[1]Before beginning to collect unemployment benefits, Loran's most recent employment was as a construction worker in Wyoming from January 7, 1981, to April 3, 1981.

uation benefit.[2]

After hearing argument on the cross motions for summary judgment, the trial court granted summary judgment for Dairyland and denied Loran's motion. Loran appeals that ruling.

The pertinent issue presented by this appeal is whether the loss of unemployment compensation benefits is a "loss of income from work." We conclude that it is not.

Dairyland argues that Loran is not entitled to income continuation benefits because he was not, in the words of the policy, "usually engaged in a remunerative occupation" at the time of the accident. It appears clear that Loran was unemployed without interruption for almost 2 years before the accident that caused his loss of unemployment compensation. Although there is no factual dispute over the fact and duration of Loran's unemployment at the time of the accident, we cannot conclude that the court was correct in determining, as a matter of law, that Loran was *not* usually engaged in a remunerative occupation.

The plaintiff's affidavit indicates that he is "usually employed in construction work." Whether a 2–year hiatus from work, possibly due to the economic conditions prevailing in industries such as construction, prevents a person from being classified as "usually engaged" in an occupation is perhaps debatable. However, it is an issue that should be resolved by the trier of fact after a full hearing on the merits and should not be resolved on summary judgment. On a summary judgment motion, the trial court must consider the facts and reasonable inferences therefrom most favorably to the nonmoving party, in this case Loran. *Wilson v. Steinbach,* 98 Wn.2d 434, 656 P.2d 1030 (1982). As the reviewing court, we must engage in the same inquiry as the trial court. *Highline Sch. Dist. 401 v. Port of Seattle,* 87 Wn.2d 6, 548 P.2d 1085 (1976). Having done that, we can-

---

[2]Loran had also sought recovery of income he might lose after his unemployment compensation benefits expired. However, he abandoned this claim because he could not show that he had any prospects of employment.

not say from the evidence that reasonable persons could reach but one conclusion on the issue.

The conclusion by this court that there is a factual question concerning whether Loran was "usually engaged in a remunerative occupation" does not mean that summary judgment was improperly granted in favor of Dairyland and against Loran. We say that because even if the trier of fact resolved the factual dispute concerning the "usualness" of Loran's employment in favor of Loran, he would not be entitled to any benefits under the plain terms of his insurance policy.

■ Terms of an insurance contract should be given fair and reasonable construction such as would be given the terms by the average man purchasing insurance. *Morgan v. Prudential Ins. Co. of Am.*, 86 Wn.2d 432, 545 P.2d 1193 (1976). The language should not be interpreted in a technical sense. *Dairyland Ins. Co. v. Ward*, 83 Wn.2d 353, 517 P.2d 966 (1974). Further, although an ambiguous clause must be construed in favor of the insured, a court cannot read ambiguity into an insurance contract where there is none. *Tri–State Constr., Inc. v. Columbia Cas. Co.*, 39 Wn. App. 309, 692 P.2d 899 (1984).

■ Applying these concepts to the present case, we conclude that unemployment compensation benefits simply are not "income from work." While we agree with appellant that unemployment compensation benefits are not akin to public assistance or "welfare," the benefits are provided to alleviate economic insecurity "due to unemployment." RCW 50.01.010. The act repeatedly refers to the compensation as "benefits" and not "income." RCW 50.20. The fact that an individual must be ready and able to work in order to receive unemployment compensation does not alter the plain fact that the benefits are available because the worker is unemployed, not because he or she *is* employed.

No Washington case appears to have dealt with the specific issue in this case. Loran cites the case of *Mazza v. Insurance Co. of N. Am.*, 149 N.J. Super. 60, 372 A.2d 1374 (1977) as support for his argument. We agree with Dairy-

land that reliance on that case is misplaced. In *Mazza,* the worker was temporarily laid off work and was due to return 2 days after the accident. In construing a provision of New Jersey's no fault insurance law, the court concluded that the plaintiff, Mazza, was in an "occupational status." Because of the significant factual distinctions and the different public policy considerations governing the interpretation of a remedial statute requiring no fault insurance and a private contract providing personal injury protection, we remain committed to the view that the loss of unemployment benefits is not loss of income from work. Therefore, Loran would not be entitled to receive 85 percent of such benefits as an income continuation benefit.

We affirm the trial court.

REED, A.C.J., and PETRICH, J., concur.

Review denied by Supreme Court December 18, 1985.